Goodbub *v.* The Estate of Hornung.

Filed Feb. 4, 1891.

---

No. 15,676.

## GOODBUB *v.* THE ESTATE OF HORNUNG.

PROBATE PRACTICE.—*Demurrer.*—*Motion to Strike Out.*—A petition for the allowance of a claim as preferred, or exceptions filed to an administrator's report, may be tested by a demurrer or by a motion to strike out.

SAME.—*Sufficiency of Petition.*—*Court May Pass upon of its Own Motion.*—The court, of its own motion, may pass upon or determine the sufficiency of a petition to allow a claim or of exceptions to a report without any demurrer or motion being filed, and exceptions taken to such action of the court presents the question for review.

SAME.—*Code of Civil Procedure.*—Whenever applicable the rule of procedure in civil causes should be applied in probate causes.

SAME.—*Examination of Report.*—*Formality.*—In most matters relating to the filing, examination and approval or disapproval of reports in probate matters, strict formality is not required; substance rather than form should be considered.

SAME.—*Preferred Claim.*—The question as to whether or not a claim should be paid as preferred can be raised at the time of the consideration of the final report, either by a petition or by exceptions.

SAME.—*Trial of Preferred Claims.*—A separate trial, to determine the right to have a claim preferred, can not be demanded ; the right to a preference must be tried and determined in connection with the trial of the question as to the allowance of the claim.

SAME.—*Order of Priority.*—*Changing.*—*When Determined.*—The court can not change the order of priority of claims fixed by the statute. They may be allowed without inquiry as to the sufficiency of assets to pay them, and their priority determined afterwards.

SAME.—*Question Presented by Record.*—The filing of a petition to have a claim preferred, the court's overruling and refusing to grant the prayer thereof, and incorporating such petition and reciting the action of the court thereon in a bill of exceptions, do not show that the court overruled the petition and declined to allow the claim as preferred, upon the ground that the evidence did not show it to be a preferred claim ; only the sufficiency of the petition in such an instance can be considered on appeal.

| | |
|---|---|
| 127 | 181 |
| 145 | 633 |
| 127 | 181 |
| 151 | 466 |
| 127 | 181 |
| 153 | 664 |
| 127 | 181 |
| 160 | 204 |
| 160 | 205 |
| 160 | 207 |
| 127 | 181 |
| e161 | 606 |

Goodbub *v.* The Estate of Hornung.

CONSTITUTIONAL LAW.—*Mechanic's Lien.*—*When Right to Vests.*—The right to a mechanic's lien becomes vested at the time the material is furnished or labor performed, and this right can not be taken away by the Legislature.

SAME.—*Control Over Remedy.*—Legislative control over the remedy is so far restricted that the remedy given for the enforcement of a lien can not be materially impaired, upon the ground that the remedy available at the time of the contract is a part of it, and can not be taken away.

SAME.—*Altering Remedy.*—*Changing.*—*Abolishing One of Two.*—Whatever belongs merely to the remedy may be altered as the Legislature sees fit, if such alteration does not impair the obligation of the contract. The remedy may be changed, or one of two abolished, even though the new or remaining one be less convenient or less prompt and speedy than the one abolished.

MECHANIC'S LIEN.—*Repeal of Statute.*—*Enforcement of Lien.*—The right to a mechanic's lien is determined by the statute in force when the material is furnished or the labor performed. Such lien can not be taken away nor the remedy for its enforcement materially impaired; and if the statute giving it is repealed the courts will still enforce it in accordance with the remedy given by such repealed statute; yet, if the repealing statute provides an adequate remedy, the lien must be enforced by the law existing at the time of bringing the action.

SAME.—*Presumption as to Time Material was Furnished.*—In an action to enforce a mechanic's lien, where a note had been given for the amount of material furnished or labor performed,

*Held,* that the presumption was, in the absence of evidence, that the last of the material was furnished and the last of the labor was performed at the time the note bore date.

SAME.—*Insolvent Owner of Building.*—*Preferred Claims.*—The act of March 9, 1889 (Acts 1889, p. 257 ; Elliott's Supp., section 1705) gives a preference, where the owner of the building is in failing circumstances or insolvent, both to the laborer and to the material man.

SAME.—*Specific Preference.*—Such preference will not entitle the holder of the preferred claim to payment in full out of the general assets of the estate, but it is a specific preference reaching only the specific fund derived from the property to which the lien would attach.

SAME.—*Failure to Give Notice*—*Amendment of 1889.*—*Preferred Claims.*— Material was furnished while the act of March 6, 1883 (Acts 1883, p. 140 ; Elliott's Supp., section 1688) was in force, which act required notice of intention to hold a lien to be given within sixty days after the material was furnished. Fifty-seven days after the material was furnished for a house, the act of March 9, 1889 (Acts 1889, p. 257 ; Elliott's Supp., section 1705) was amended, which amendment provided, in addition to the provisions of the act of 1883, for the acquisition of a lien

Goodbub v. The Estate of Hornung.

whether notice was filed or not; and, in case of the insolvency of the owner of the building, that the claims of the material man or laborer should be a preferred debt.

*Held*, that the failure to give notice before the act of 1883 was repealed did not prevent the foreclosure of the lien acquired in furnishing the materials, that such lien could be enforced without giving notice, and, the owner of the building being insolvent, that the claim could be enforced as a preferred one.

From the Floyd Circuit Court.

*J. V. Kelso, C. D. Kelso, G. V. Howk* and *J. C. Zulauf*, for appellant.

*C. L. Jewett* and *H. E. Jewett*, for appellee.

McBRIDE, J.—Appellant filed a claim against the estate represented by the appellee, reciting its nature and origin, and asking to have it allowed as a preferred claim.

The administrator, by an entry on the margin of the appearance docket, allowed it as a "general and unpreferred claim."

The estate was afterwards found to be insolvent, and ordered to be settled accordingly.

In due time the administrator filed his final report, and caused notice to be given of the time set for its hearing.

When the report came up for hearing appellant appeared and filed a written petition, reciting the filing of said claim and its allowance by the administrator, setting out a copy of the claim, and asking for an order directing the administrator to pay the claim in full, as preferred.

Of this petition the bill of exceptions says: "And the court, after argument of counsel, overruled said petition and refused to grant the prayer thereof."

Appellant excepted, and thereupon filed exceptions to the final report. One of the exceptions was that said claim had been admitted as an unpreferred claim by the administrator, "Whereas it is a preferred claim." It is then said in the bill of exceptions: "And the court, after argument of counsel, overruled said written exceptions." Appellant, as to each

of said rulings, excepted, and the questions were saved by a bill of exceptions.

Counsel for appellee earnestly insist that the record presents no question which this court can consider. They say: " Neither of these questions is presented by the record in any form in which they can avail the appellant in this court. No question of law was raised by any pleading before the circuit court, and the petition to have the appellee's claim allowed as a preferred claim, as well as his exceptions to the report, was overruled by the court because there was no proof to sustain the petition or the exceptions. The bill of exceptions does not contain any of the evidence given at the hearing, and, therefore, while the action of the circuit court was clearly right on the premises, even if it had been wrong, and against the weight of the testimony, the Supreme Court would be unable to decide the question because of the absence of any statement as to what proof was offered in support of the allegations made by the appellant."

With all respect for the ability and learning of counsel we must say that they are wrong in this contention.

As above stated, the recitals in the bill of exceptions immediately following the filing of the petition, and the exceptions to the report respectively, are, "And the court, after argument of counsel, overruled said petition and refused to grant the prayer thereof," " and the court, after argument of counsel, overruled said written exceptions." To what was the argument of counsel addressed ? No evidence whatever seems to have been introduced or offered, and counsel say the court thus acted because there was no proof to sustain the petition or the exceptions.

If the bill of exceptions showed that the ruling of the court was upon the ground that there was no proof, or that the proof offered was insufficient, a very different question would be presented from that which we think the record requires us to decide. We can, however, only consider such questions as are in fact presented by the record, and we think

the only fair inference we can draw from the bill of excep-tions is that the argument of counsel was addressed to the sufficiency of the petition and of the exceptions respectively, and that the ruling of the court was, in effect, that upon the facts thus presented the appellant was not entitled to the re-lief asked.

Counsel for appellee say, however, if the "appellee had, by any pleading, challenged the sufficiency of the facts stated in the petition or exception, and the court had held as mat-ter of law that they were not sufficient, and the proper ques-tion had been reserved, a question of law would have been presented to this court."

When a petition of this character is presented to the court, or exceptions are filed to a report of an administrator, we think their sufficiency may be tested by a demurrer, or by a motion to strike out. We also think, however, that the court may, of its own motion, in such cases pass upon and determine the sufficiency of the petition or of the excep-tions without any demurrer or motion being filed. So far as exceptions to reports are concerned this is, in effect, a mat-ter of frequent occurrence, when the court ignores or de-clines to hear testimony upon exceptions which it deems insufficient to present any valid objection to the approval of the report. The practice in probate matters in this State is *sui generis.*

Whenever applicable we think the rules of procedure in civil causes should be applied, but in most matters relating to the filing, examination and approval or disapproval of reports, strict formality is not required. While all persons interested in the estate are constructively present, as matter of fact we must know that, as a rule, the majority of them are of necessity absent and unrepresented, or are nominally represented by the administrator or executor. Many of them are infants, or are under other legal disabilities, and the courts in passing upon such matters should be more ob-servant of substance than of form.

The question as to whether or not a claim should be paid as preferred may properly be raised at the time of the consideration of a final report. We think it may be raised either by a petition, as was done in this case, or by exceptions to the report. The appellant when he filed his claim recited therein the facts which he claimed entitled him to a preference. If the administrator had refused to allow it, and it had been transferred to the trial docket, a demurrer to it would not have tested the sufficiency of its averment relating to a preference. Nor could a separate action have been maintained to try that question. *Jenkins* v. *Jenkins*, 63 Ind. 120. That question *may* be tried and determined in connection with the trial of the question as to the allowance of the claim. *Blankenbaker* v. *Bank of Commerce*, 85 Ind. 459. The rule in such cases is, however, as stated in *Fickle* v. *Snepp*, 97 Ind. 289: " Claims may be allowed without inquiring whether there are assets sufficient to pay them, or whether they are or are not members of a preferred class. The allowance comes first; the direction as to payment comes afterward. The statute fixes the order of priority of claims, and this the courts can not change." See, also, *Jenkins* v. *Jenkins*, *suprà*.

The entry by the administrator on the appearance docket of his allowance of the claim " as a general and unpreferred claim," while it was, under section 388, Elliott's Supp., operative between the claimant and · the administrator as an adjudication of the validity and amount of the claim, had no effect upon the right of the claimant to insist upon having the claim treated as preferred.

When in due course that point in the administration of an estate is reached when it becomes the duty of the court to decide the manner of distributing the assets, a claimant has the undoubted right to insist upon his preference if he claims one.

If the facts recited in the claim and petition or motion are, in the judgment of the court, legally sufficient to entitle

the party to the preference, it becomes then a question of fact. If the administrator admits the facts to be as stated, the claim should be allowed as preferred, but if the facts are disputed the court may hear evidence. If, however, the court, without the filing of a demurrer or a motion to strike out, decides that the facts stated in the claim and petition are not sufficient in law to entitle the party to the preference claimed, we think an exception to such ruling, properly saved by a bill of exceptions, will authorize this court to review the action of the court below.

This seems to us, from an examination of the record, to have been the course pursued. As we understand the bill of exceptions, the circuit court by its rulings simply held that the facts brought to its notice by the petition and by the exceptions to the report, respectively, were not sufficient in law to entitle the party to the preference. We conclude, therefore, that the question is fairly and properly presented to this court.

This brings us to the consideration of what we regard as a much more difficult question. Was the appellant entitled to an order for the payment of his claim as a preferred claim?

The claim filed was a note for $600, dated January 11th, 1889, given by the decedent to appellant, due four months after date. Accompanying the note was a verified statement, in which, with other things, it was averred that the consideration for the note was material furnished to and labor performed by claimant for decedent in his lifetime in the repair of a certain brewery building belonging to decedent, and making and building an addition thereto in the year 1889, and that at the time of the completion of said repairs and of said brewery building the decedent was in failing circumstances, and that his estate was insolvent.

The report of the administrator shows that after the payment of all expenses of administration and of all claims which he had allowed as preferred, there remained for dis-

tribution $8,428.06, and it was agreed by the parties that of this amount $1,000 was received by the administrator from the sale of the addition to the brewery referred to in appellant's claim.

It is further shown by the report that if appellant's claim is not preferred the assets will pay 35 per cent. of claims due to creditors. The court ordered the distribution of 33⅓ per cent. of the money among the creditors, and the retention by the clerk of the residue to await the final decision of this case.

At the date of this note, January 11th, 1889, the following statute was in force relating to mechanics' liens (section 1688, Elliott's Supp.) :

"Section 1. Be it enacted, etc., That mechanics, and all persons performing labor or furnishing material or machinery for erecting, altering, repairing or removing any house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure, may have a lien, separately or jointly, upon the house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure which they may have erected, altered, repaired or removed, or for which they may have furnished material or machinery of any description, and on the interest of the owner of the lot or land on which it stands, or with which it is connected, to the extent of the value of any labor done or materials or machinery furnished, or both."

Section 3 of this act requires any person wishing to acquire such lien to file in the office of the recorder of the county at any time within sixty days after the performing of such labor or furnishing of such materials or machinery, notice of his intention to hold a lien upon such property for the amount of his claim.

This statute was approved March 6th, 1883.

On the 9th day of March, 1889, an act of the Legislature was approved amending certain sections of the act of 1883, from which we have quoted. This latter act had an emer-

gency clause, and therefore took effect at once. By the act of March 9th, 1889, section 1, above quoted, was amended to read as follows:

" Section 1. That contractors, sub-contractors, mechanics, journeymen, laborers and all persons performing labor or furnishing material or machinery for erecting, altering, repairing or removing any house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure, may have a lien, separately or jointly, upon the house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure which they may have erected, altered, repaired or removed, or for which they may have furnished material or machinery of any description, and on the interest of the owner of the lot or land on which it stands, or with which it is connected, to the extent of the value of any labor done, or material or machinery furnished, or both, and all claims for wages for mechanics and laborers employed in or about any shop, mill, wareroom, storeroom, or manufactory, shall be a first lien upon all the machinery, tools, stock of materials, or work, finished or unfinished, located in or about such shop, mill, wareroom, storeroom, or manufactory, or used in the business thereof; and should the person, firm or corporation be in failing circumstances, the above mentioned claims shall be preferred debts, whether notice of lien be filed or not." Elliott's Supp., section 1705.

This statute, like that of 1883, requires the filing in the recorder's office, within sixty days after the performance of the labor or furnishing of material, etc., of a notice similar in terms to that required by the other statute. Appellant did not file any notice, but insists that by virtue of the provisions of section 1 of the act of March 9, 1889, decedent having been in failing circumstances when the labor was done and material furnished, his claim therefor is a preferred debt, and he is entitled to have it paid in full.

Appellee's position with reference to the claim of prefer-
ence under this statute is as follows:

1. The act of March 9, 1889, not having been enacted
until after the work was done, material furnished and the
note taken, does not apply to this transaction, and appellant
is not entitled to the benefit of its provisions.

2. That, by a fair construction of the statute, no claims
are to be preferred, except those for wages due to mechanics
and laborers.

We will consider these questions in inverse order. Does
the preference given embrace claims of this character?

The section in question first provides for a lien upon cer-
tain structures, and the land upon which they are situate, in
favor of those performing labor or furnishing material
or · machinery for the erection, altering, repairing or re-
moving of such structures, and, secondly, for a lien upon
machinery, tools, stock of materials and work, finished or
unfinished, in favor of mechanics and laborers employed in
and about the establishment.   The claims of all these differ-
ent classes of persons are provided for by the same section—
one class of claims to be secured by a lien on the structure
and the other by a lien on the machinery, tools, etc., and
the section concludes by the statement, that in a certain con-
tingency " *the above mentioned claims* shall be preferred
debts." All of these persons desiring to secure the lien to
which they are entitled must proceed in the same manner.
They must file the same kind of notice, in the same place,
and within the same time.

We know of no rule of construction that would justify us
in giving to the concluding provision of this section the
limited interpretation contended for by appellee.   The ob-
vious meaning of the Legislature, as we gather it from the
language used, was that, if the persons, firms or corporations
owning the structures, or operating the shops, mills, etc.,
previously named in the section were insolvent, all claims
embraced within its terms should be preferred debts, etc.

Any other construction would be forced, and would do violence to the language used.

Does the act of March 9th, 1889, apply to this claim? The averment in the claim is, that the consideration for the note was certain material furnished and labor performed in the year 1889. The note was executed January 11th, 1889. We have concluded that the date of the note will be presumed to mark the time when the last of the material was furnished and the last of the labor performed. If we are right in this, appellant, if he desired to secure his claim by a lien on the premises, was required to file notice in the recorder's office within sixty days from that date, or on or before March 12th, 1889. The act of March 9th, 1889, therefore, took effect three days before the expiration of the time within which appellant was required to file his notice.

As a general rule statutes operate prospectively only. Cooley Const. Lim. 455.

It is now settled by the weight of authority that the right to a mechanic's lien under a statute becomes a vested right at the time the material is furnished and the labor performed, and that this right can not be taken away even by the Legislature. Jones Liens, section 1558, and authorities there cited. Even the legislative control over the remedy is so far restricted that the remedy given for the enforcement of the lien can not be materially impaired. *Buser* v. *Shepard*, 107 Ind. 417. This is upon the ground that remedies which are available for the enforcement of a contract at the time and place where it is made, are a part of its obligation, and that to allow the remedy to be taken away or materially restricted would, to that extent, impair the obligation of the contract. Cooley Const. Lim. 350.

Whatever belongs merely to the remedy may be altered according to the will of the statute, provided the alteration does not impair the obligation of the contract. Cooley Const. Lim. 346.

Laws changing remedies for the enforcement of legal contracts, or abolishing one remedy when two or more existed, may be perfectly valid, even though the new and remaining remedy be less convenient than that which was abolished, or less prompt and speedy.   Cooley Const. Lim. 347, and cases cited.

It follows, therefore, that in so far as a right to a mechanic's lien in a given case.is concerned, we must look only to the statute in force when the material or machinery is furnished or the labor is done; and, also, that in so far as there may be an attempt by legislation to take away or materially impair the remedy for the enforcement of such lien, neither leaving nor substituting an efficient remedy, we must look to the same source.

Subject to this exception the rule has been laid down, we think correctly, that the rights of the parties under mechanic's lien laws are to be ascertained and fixed by the law in force when the contract is made, but such rights are to be established and enforced by the law existing at the bringing of the suit.   Phillips Mech. Liens, section 24;   *Willamette Falls, etc., Co.,* v. *Riley,* 1 Oregon, 183; *Andrews* v. *Washburn,* 3 S. & M. 109.

The case of *Paine* v. *Woodworth,* 15 Wis. 327, seems to be directly in point upon the question here presented.   In that case the court says :   " We have no doubt that after work had been done for which the party was entitled to a lien under the Revised Statutes, and before the expiration of the time within which he might proceed to enforce it, it would be competent for the legislature to provide a new and more efficacious remedy, and that such lien might then be enforced according to that.   And the objection that the party had not complied with the old statute, would be of no avail.   That it is competent for the Legislature to change the remedy in such cases, is too well understood to need argument."

In so far as the right to a lien is concerned, and the means for securing and enforcing it, the act of March 6th, 1883, and

Goodbub v. The Estate of Hornung.

the amendatory act of March 9th, 1889, are, as applied to this appellant, practically the same. The act of March 9th, 1889, however, gives an additional remedy if the debtor is in failing circumstances, and relieves the claimant from the necessity of filing the notice. We are of the opinion that this affects the remedy only. As the amendatory statute became operative before the expiration of the time within which appellant had the right to file his notice in the recorder's office, and thus establish his lien, he had the right to avail himself of the new and additional remedy thus given him.

The preference which the statute thus gives will not entitle the holder of the preferred claim to payment in full out of the general assets of the estate, but it is a specific preference reaching only the specific fund derived from the property to which the lien would attach. If such fund is sufficient in amount to pay the preferred claims in full, they should be so paid. If, however, such fund is insufficient for this purpose, the holders of preferred claims are entitled to share pro rata in the fund, and as to any unpaid balance due them would stand on the footing of the general creditors. Necessarily, in such case, the class of preferred claimants, as to such fund, will embrace all who, as to the specific property, come within the terms of section 1 of the amendatory act, whether they have filed notice in the recorder's office or not.

In this case it is shown that $1,000 of the assets of the estate remaining for distribution was received by the administrator from the sale of the addition to the brewery referred to in appellant's claim.

The judgment is reversed, with instructions to the circuit court to proceed in accordance with this opinion.

Filed Feb. 4, 1891.