## Sulzer-Vogt Machine Company v. Rushville Water Company et al.

[No. 20,057.    Filed December 11, 1902.    Rehearing denied March 10, 1903.]

Mechanic's Lien.—*Notice.—Debtor in Failing Circumstances.*—The provision of the act of 1889 (Acts 1889, p. 257, §7255 Burns 1894) making certain claims against debtors in failing circumstances liens without filing notice refers to claims for wages for mechanics and laborers employed in and about any shop, mill, warehouse, store-room or manufactory; and such lien is limited in its operation to this specified class of service, and does not extend to structures other than those designated. *Goodbub* v. *Hornung's Estate*, 127 Ind. 181, and *Jenckes* v. *Jenckes*, 145 Ind. 624, overruled. *pp. 203-208.*

Same.—*Notice.—Last Material Furnished.*—Where the owner had accepted from a subcontractor certain fixtures and machinery placed in a power house as fully completed and had for more than four months been in the possession thereof, the contractor ceased to be the agent of the owner, in the absence of an objection by the latter that the contract had not been completed, to order additional materials that might be made the basis for an extension of the time in which to file a lien for the original work and materials furnished by the subcontractor. *p. 208.*

From Rush Circuit Court; *L. J. Kirkpatrick*, Special Judge.

Suit by the Sulzer-Vogt Machine Company against the Rushville Water Company and others for the enforcement of a mechanic's lien. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court, under clause 2, §1337j Burns 1901. *Affirmed.*

*J. E. Watson* and *Harold Taylor*, for appellant.
*C. F. Coffin*, for appellees.

GILLETT, J.—Appellant sought to assert and foreclose a mechanic's lien against the property of appellee for money due said appellant, as a subcontractor for the Howe Pump & Engine Company, because of the furnishing, at the latter's request, of boilers, fixtures, etc., for the power-house of appellee. A demurrer was filed by appellant to the second paragraph of appellee's answer, that was addressed to the second paragraph of appellant's cross-complaint. An assignment of error is based on said ruling. We proceed to consider, since the demurrer searched the record, whether said paragraph of cross-complaint stated a cause of action against appellee.

In the decision of this cause by the Appellate Court it appears that said court construed said paragraph of cross-complaint as proceeding on the theory that appellant was entitled to a lien, not because it had given the statutory notice of its intention to hold a lien, but because of the allegations of said paragraph relative to intervening insolvency. It is difficult to stamp a particular theory upon this paragraph, but, after consideration, we have concluded that the view of the Appellate Court was correct.

At the time this action was commenced and said paragraph filed, the mechanic's lien act, approved March 9, 1889 (Acts 1889, p. 257), was in force. Section one of said act provided: "That contractors, subcontractors, mechanics, journeymen, laborers, and all persons performing labor or furnishing material or machinery for erecting, altering, repairing, or removing any house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure, may have a lien separately or jointly upon the house, mill, manufactory, or other building, bridge, reservoir, system of water-works, or other structure which they may have erected, altered, repaired, or removed, or for which they may have furnished material or machinery of any description, and on the interests of the owner of the lot or land on which it stands, or with

which it is connected, to the extent of the value of any labor done, or material or machinery furnished, or both, and all claims for wages for mechanics and laborers employed in or about any shop, mill, wareroom, storeroom, or manufactory, shall be a first lien upon all the machinery, tools, stock of material or work, finished or unfinished, located in or about such shop, mill, wareroom, storeroom or manufactory or used in the business thereof; and should the person, firm or corporation be in failing circumstances, the abovementioned claims shall be preferred debts, whether notice of lien be filed or not."

We are required to construe the above statute by determining what class or classes of claims the General Assembly had reference to in the following provision: "And should the person, firm or corporation be in failing circumstances, the above-mentioned claims shall be preferred debts, whether notice of lien be filed or not." It is clear, from the earlier language of this section, that the first class that is given rights by the section are contractors, subcontractors, mechanics, journeymen, laborers, and all persons performing labor or furnishing material or machinery for erecting, altering, repairing, or removing any of the structures included within the meaning of the statute. The persons mentioned may obtain not only a lien upon the structure, but they may also, under the provision of the section quoted and the next succeeding section, obtain a lien upon the real estate upon which the structure is situate. The second class that is given a lien under said first section includes mechanics and laborers employed in or about any shop, mill, wareroom, storeroom, or manufactory, and their lien is confined to the machinery, tools, stock of material, and work, finished or unfinished, located in or about such shop, storeroom or manufactory, or used in the business thereof. The existence of this classification was recognized in *Goodbub* v. *Estate of Hornung,* 127 Ind. 181; and *McElwaine* v. *Hosey,* 135 Ind. 481. It will be observed that

these two general classes of persons are not only different in their personnel, but that they are given rights so variant that they could not come in conflict with each other.  This, in the absence of other considerations, leads to the presumption, since the provision for a preference is found in the latter part of the section, that the words "the above-mentioned claims" refer only to the last class of claims mentioned in the statute.  Moreover, as we look back of the words "the above-mentioned claims," to find their antecedent, we observe that it is only the second class of persons that the statute in words refers to as possessing "claims."

The conclusion that our observations thus far foreshadow is reënforced by the fact that the particular right that is granted in case the person, firm, or corporation is in failing circumstances, is, not the right to a lien *eo nomine*, but to have the "claim" put on the basis of a preferred debt.

In the case of *Goodbub* v. *Estate of Hornung, supra,* some consideration was given to the meaning of the term "preferred debts," as used in this statute.  It was there said: "The preference which the statute thus gives will not entitle the holder of the preferred claim to payment in full out of the general assets of the estate, but it is a specific preference, reaching only the specific fund derived from the property to which the lien would attach.  If such fund is sufficient in amount to pay the preferred claims in full, they should be so paid."  Assuming the correctness of these statements, it must be evident that the General Assembly did not contemplate any such far-reaching consequences as would result if the claims of contractors and subcontractors, and the persons the statute classes with them, were put on a basis of such high privilege.  The persons mentioned have a right of lien that may extend to the interest of the owner in the real estate, but as against the real estate proper it was certainly not the legislative purpose to displace antecedent liens.  Such a result would follow if, as held in *Goodbub* v. *Estate of Hornung, supra,* the extent of the right of pri-

ority were measured by the property to which the lien attaches. It is but reasonable to suppose that it was the intent of the General Assembly to give the first class the right to a lien merely, enforceable to the extent provided by statute, and to confine the lien and priority provided by the latter part of the section to mechanics and laborers. So construed, the language under consideration would be calculated to do nothing more than to provide a fund for the payment of the pay-roll of the persons engaged in the classes of business that the statute refers to, as is eminently just and proper, and would not operate to displace antecedent rights in real property.

In *McElwaine* v. *Hosey*, 135 Ind. 481, the right view was taken of the construction of the statute under consideration. It was there said: "There is a contention as to whether the labor, for which a recovery is sought in this proceeding, accrued under any of the methods of employment for which the acts of 1889, §1, page 257, create a lien without notice. This is a remedial statute. It is very specific in its terms, and was evidently to secure to the class of wage-earners, known as mechanics and laborers, the fruits of their toil, while employed in or about any shop, mill, wareroom, storeroom, or manufactory, by granting them first liens upon all the machinery, tools, stock or material, or work finished or unfinished, located in or about such shop, mill, wareroom, storeroom, or manufactory, or used in the business thereof; and should the person, firm, or corporation be in failing circumstances, the above-mentioned claims shall be preferred debts, whether notice of lien be filed or not, but this statute, it will be observed, providing a lien, without filing such notice, is limited in its operation to this specified class of service, and does not extend to erections or structures other than those thus designated. If parties desire a lien for other services enumerated in section one, but not embraced in this list, they must file their notice of mechanic's lien in

the recorder's office, as provided by section three of the same act."

The cases of *Goodbub* v. *Estate of Hornung, supra,* and *Jenckes* v. *Jenckes,* 145 Ind. 624, can not be entirely reconciled with our view, as expressed in this decision. The Appellate Court correctly declared the rule of law as applicable to the question under consideration, and it would not have been necessary for us to transfer this case but for the fact that our latest case upon the subject is in some measure out of accord with the McElwaine case.

It is proper to observe that the sole questions that we have considered have been the respective rights of the two statutory classes of persons under the statute above set out. It is also to be noted that the time in which appellant might have filed a mechanic's lien had expired before the decision of *Jenckes* v. *Jenckes, supra.*

The rule of *stare decisis* should not be lightly departed from. The common law could not have attained to the dignity of a science if courts of last resort were disposed to disregard precedents. But past errors can not be an excuse for the evasion of present duties, and in a case of this kind, where we feel that, through misapprehension, we have clearly failed correctly to declare the legislative will, we deem it our duty, after a painstaking consideration of the statute, and the course of adjudication under it, to declare the correct interpretation, and to overrule former cases to the extent that they are not in accord therewith.

The consideration is urged upon us that the act of March 8, 1899 (Acts 1899, p. 569, §7255 Burns 1901), was enacted under a presumed knowledge of the interpretation that was given the somewhat similar statute of 1889 by the case of *Jenckes* v. *Jenckes, supra.* Inasmuch, however, as this suit was commenced, and the particular paragraph of complaint filed, while the act of 1889 was still in force, the remedy of appellant, if any, is to be determined by the former act. *Goodbub* v. *Estate of Hornung, supra.* In

208　　SUPREME COURT OF INDIANA,

Sulzer-Vogt Mach. Co. *v.* Rushville Water Co.

view of this fact, we leave to future determination the question whether, considering the state of the authorities at the time of the enactment of the statute of 1899, there existed such a settled rule concerning the construction of the earlier act as to create the presumption that the General Assembly enacted the later law with the construction contended for by appellant's counsel stamped upon it. See *Warner v. Texas, etc., R. Co.,* 164 U. S. 418, 17 Sup. Ct. 147, 41 L. Ed. 495; *Willis* v. *Eastern Trust, etc., Co.,* 169 U. S. 295, 18 Sup. Ct. 347, 42 L. Ed. 752; *Pratt* v. *Miller,* 109 Mo. 78, 18 S. W. 965, 32 Am. St. 656.

The second paragraph of answer was also a sufficient answer to appellant's first paragraph of cross-complaint, in view of the allegations of said paragraph of cross-complaint. Said paragraph discloses that the notice of intention to hold a lien was not given within the time required by law, except as an item of twelve braces of one and one-quarter round iron, alleged to have been furnished October 2, 1896, be counted as a part of the original contract of construction. The suit is not to recover for said item, as its value is not alleged, but the suit is to recover on a contract to furnish a boiler, fixtures, etc. Before it was competent to foreclose a mechanic's lien against the property for the whole price of work and material furnished because of a small item furnished on the subsequent direction of the principal contractor, facts ought to have been averred showing his continued agency. After the owner had accepted the boiler, fixtures, etc., as fully completed, and had for more than four months been in the possession thereof, the contractor ceased to be the agent of the owner, in the absence of an objection by the latter that the contract had not been completed, to order additional materials that might be made the basis for an extention of the time in which to file a lien, for the original work and materials furnished by the subcontractor.

Appellant was not entitled to a new trial on the ground of surprise, or because of newly discovered evidence. It is apparent that the rulings relative to the admission and rejection of evidence that are complained of could not have affected the result.

The judgment of the lower court is affirmed.