David **MOXLEY**, Appellant
(Plaintiff Below),

v.

The **INDIANA NATIONAL BANK,**
Appellee (Defendant Below).

No. 4–781A60.

Court of Appeals of Indiana,
Fourth District.

Dec. 30, 1982.

Rehearing Denied Jan. 27, 1983.

Arthur H. Northrup, Indianapolis, Robert T. Thopy, Matchett & Thopy, Shelbyville, for appellant.

Malcolm C. Mallette, Krieg DeVault Alexander & Capehart, Indianapolis, Phillip W. Brown, Brown, Brown & McQueen, Shelbyville, for appellee.

MILLER, Judge.

Appellant-plaintiff David Moxley is appealing an adverse summary judgment rendered by the Shelby Circuit Court in a tort action alleging misconduct and mismanagement by his former guardian, Indiana National Bank. Moxley requested actual damages of $2,326,704 and punitive damages of $3,500,000. The trial court granted summary judgment on the basis that the issues in the present civil case had been adjudicated in the Marion County Superior Court, Probate Division (hereinafter referred to as probate court) by a judgment which approved, after lengthy hearings, the Bank's final accounting and discharge as guardian of Moxley. Moxley claims there are issues involving acts of misconduct by the Bank which were not litigated in the probate proceedings and he is entitled to litigate these issues in a separate civil action. We find the trial court correctly determined the probate court judgment to be res judicata and affirm.

### FACTS

This action was brought while the final guardianship accountings were pending. With regard to the guardianship, on February 6, 1976, the probate court appointed the Bank as guardian of the person and estate of Moxley.[1] The Bank filed an interim accounting which was approved ex parte on May 31, 1978 and on January 17, 1979 the guardianship was terminated by the probate court. After this termination, Moxley filed 48 objections to the interim accounting, asking that the Bank be surcharged. The court then vacated the ex parte approval of the interim accounting. When the Bank filed its final accounting on July 20, 1979, Moxley filed an additional 33 objections to this accounting, again asking that the Bank be surcharged. The first hearing on these accountings and the 81 objections thereto was convened on March 17, 1980 and continued by agreement of the parties. Ten days later, on March 27, 1980 and while the guardianship litigation was pending, Moxley filed this separate tort action alleging mismanagement by the Bank.

Following further hearings on the guardianship accounting on April 14, 15, 16, 17, 18, 21, and 22, the probate court entered its findings of facts, conclusions of law and judgment on July 21, 1980. The interim and final accountings were in all respects approved and the Bank was discharged, the court concluding the Bank had exercised proper judgment and care in the supervision of the person and estate of Moxley.

After the probate court judgment, the Bank, in this civil case, filed a motion for summary judgment attaching the 31 pages of findings of fact, the conclusions of law and the judgment of the probate court. The Bank based its motion on the probate court judgment plus the pleadings and exhibits previously filed in this cause.[2] These previous filings included:

1) Moxley's 81 objections to interim and final accounts;

2) Responses of the Bank to objections to interim and final accounts;

3) Moxley's reply to the Bank's responses;

1. An appeal of the approval of the Bank's final accounting is now pending in this Court, *Moxley v. The Indiana National Bank,* No. 2–381 A 89 (Filed March 20, 1981). That record, of which we can take judicial notice, *Cunningham v. Hiles,* (1982) Ind.App., 435 N.E.2d 49, *trans. pending,* reveals on January 30, 1976, Moxley and his wife Constance filed a petition for the appointment of Indiana National Bank as guardian over the person and estate of Moxley. After a hearing at which Moxley and his wife testified in favor of the guardianship, the probate court approved the appointment which was then accepted by the Bank. Moxley's original petition requesting the guardianship stated his net worth to be less than $50,000.

2. These pleadings and exhibits were accepted into evidence at the summary judgment hearing. Moxley's objection to the use of these documents is without cogent argument. Ind. Rules of Procedure, Trial Rule 56(C) provides that in summary judgment the court shall consider the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits and testimony.

4) Moxley's objections to executor's final account in Constance Norris Moxley's estate and petitions to determine ownership of assets, liability for debts and surcharge against the executor; and

5) Moxley's complaint for damages against the Bank which was pending in the Hamilton County Court.

On October 31, 1980, with both parties present for the summary judgment hearing, Moxley was given leave to file documents with the court to oppose the motion. Although Moxley filed additional briefs and arguments,[3] he filed no material which the court could have considered in determining a genuine issue as to any material fact pursuant to Ind.Rules of Procedure, Trial Rule 56 (i.e., depositions, affidavits, etc.)

In his brief Moxley presents this issue for our review—"whether a probate court's approval of a final accounting pursuant to statute, against special statutory objections is res judicata on a tort action" for mismanagement in the Bank's dealings with Moxley's person and property.

## DECISION

■ Moxley contends this action for tort damages should not be precluded under the doctrine of res judicata for two main reasons. First, he claims there is no estoppel by judgment because there are new matters in this complaint which were not included in the final accounting and he asserts the parties are not the same because "they are reversed."[4] Second, he suggests collateral estoppel is not applicable to this case. The Bank, on the other hand claims the alleged new matters were adjudicated by the probate court and, further, that a ward who contests his guardian's final accounting is barred by res judicata from asserting the same issues as a plaintiff in another cause of action against the guardian.

We must first observe that a summary judgment procedure is utilized to terminate those causes of action which have no factual dispute so the judgment may be made as a matter of law. The procedure is an aid to screen out spurious causes and to relieve litigants of undue burdens. Thus, in summary judgment proceedings the judge applies the law to the facts when there is no factual dispute, and the party seeking summary judgment has the burden of establishing there is no genuine issue of any material fact. *Thrapp v. Austin,* (1982) Ind.App., 436 N.E.2d 1170. Further, the trial court, as did the trial court in this case, considers only the pleadings, depositions, answers to

---

**3.** The first error alleged in Moxley's Motion to Correct Errors reads as follows:

> "Denial of a fair trial by irregularity in the proceedings of the court or prevailing party, or order of court or abuse of discretion in the court's denial of Plaintiff's motion to dismiss the motion for summary judgment for failure to attach pleadings in the prior action relied on as res judicata."

Because, as acknowledged in Moxley's brief, the trial court did not rule on this motion to dismiss, this error is not properly before us for review. No error can be raised on the appellate court on a motion which was never ruled upon by the trial court. *Yager v. State,* (1982) Ind., 437 N.E.2d 454; *Jaudon v. State,* (1970) 255 Ind. 114, 262 N.E.2d 851. Additionally, Ind.Rules of Procedure, Trial Rule 56 makes no mention of a motion to dismiss as a proper means to attack a motion for summary judgment. Moxley's motion to dismiss accompanied by arguments on the facts and the law was no more than a brief in opposition to the Bank's motion for summary judgment.

**4.** The status of the parties in guardianship is the same as in a hearing on a final accounting in an estate.

> "It is well settled that where exceptions are filed, the report or account submitted stands as the complaint, and the exceptions thereto as the answer. Upon the issues thus formed, the trial is had. The administrator or executor occupies the same status as the plaintiff in the ordinary civil action, and the exceptor that of the defendant, so far as the procedure of the trial is concerned. *Spray v. Bertram,* (1905) 165 Ind. 13, 74 N.E. 502; *Meier v. Union Trust Company,* (1931) 93 Ind.App. 457, 176 N.E. 42."

*Gary State Bank v. Gary State Bank,* (1936) 102 Ind.App. 342, 347, 2 N.E.2d 814, 816. In the guardianship proceedings, the account represents the complaint, giving the Bank the status of a plaintiff. The objections stand as an answer and confer the status of defendant on Moxley. In this tort action Moxley is the plaintiff while the Bank is the defendant. Moxley contends this reversal of labels precludes res judicata.

interrogatories, admissions, affidavits and testimony on file. T.R. 56.

After examining the material before the trial court, we find the elements of res judicata or estoppel by judgment do exist and uphold the trial court's granting of summary judgment in the Bank's favor. For this reason we need not reach the issue of collateral estoppel.

■ To apply the doctrine of res judicata, Indiana courts have consistently required the following elements:

"The basic elements of res adjudicata are four-fold: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter now in issue was, or might have been, determined in the former suit; (3) the particular controversy adjudicated in the former action must have been between the parties to the present suit; and (4) judgment in the former suit must have been rendered on the merits. *Middlekamp v. Hanewich* (1977) [173 Ind.App. 571], 364 N.E.2d 1024, 1033; *Crown Point School Corp. v. Richards* (1973), 154 Ind.App. 545, 549, 290 N.E.2d 449, 452; *Wright v. Kinnard* (1970), 147 Ind.App. 484, 488, 262 N.E.2d 196, 199–200."

*Blake v. Blake,* (1979) Ind.App., 391 N.E.2d 848, 851. Moxley directs his arguments in

this appeal to elements two and three claiming some matters in this complaint were not adjudicated in the probate action and alleging the parties were not the same.

First, Moxley argues his complaint covers a different time period than adjudicated in the final accounting. He contends the probate court judgment was confined to matters occurring before the termination of the guardianship on January 17, 1979 and did not extend to acts of misconduct between that date and the date of discharge on June 30, 1979. This claim is based on the probate court's exclusion of the expert testimony concerning the value of Moxley's stock in the Henry B. Gilpin Corporation [5] as of June 30, 1979. But this argument was waived because it was not included in the motion to correct errors.[6] *Rogers v. Rogers,* (1982) Ind.App., 437 N.E.2d 92. But even if not waived, the argument is refuted by the probate court's finding of fact which stated the guardian's final accounting covered the period from February 7, 1978 through June 30, 1979 and the judgment of the probate court approving the accounting as filed.

Moxley also contends there are new matters which were never litigated in the probate court. In his motion to correct errors, he incorporates by reference 16 issues [7]

**5.** Moxley's stock in the Gilpin Corp. constituted 80% of his total assets. Moxley claimed the Gilpin stock declined in value from the commencement of the guardianship until June 15, 1979 when it allegedly became substantially worthless. He contends the Bank held the Gilpin stock "in too extensive amount for the good prudent man principles of investment," claiming the Bank should have diversified. Finding of fact no. 2.01 of the probate court found the Gilpin stock was restricted, could not have legally been sold at any time "under SEC Rule 144 or under any exemption to the Securities Act and registration could not have been accomplished." Additionally, the probate court found the Gilpin stock could not be sold as it was pledged to American Fletcher National Bank and only the bank could sell the stock. If these findings were erroneous, Moxley's remedy is by way of appeal.

**6.** Moxley in his brief presented four additional arguments that are waived because they were not included in his Motion to Correct Errors. He stated (1) an entry of judgment in one case

is not available to defeat by estoppel of any sort a cause of action filed before the judgment was rendered; (2) res judicata should apply only to the issues pleaded in the probate case because the complaint stated a cause of action to the trial court before there was any judgment or finding of the probate court; (3) in a guardianship the statute allows no surcharge on objections to accounting so the common law surcharge by a separate suit is neither duplicated or pre-empted; and (4) because the guardian was six months late in filing its accounting and making distribution the Bank cannot rely on the date of distribution of June 30, 1979 however correct that may be as a proper measure of the extent of liability of the guardian.

**7.** In these 16 issues are two allegations (no valid medical basis for the guardianship and failure to fund a trust under Constance Moxley's will) which were not contained in his complaint against the Bank or in any materials which were presented to the trial court in the summary proceedings. Thus, there was no

from an earlier brief in opposition to the Bank's motion for summary judgment. Moxley argues he has presented issues which arose after the accounting. A review of the timing of these two cases immediately reveals all matters in the complaint in this case could have been litigated in the probate court. Seven days of hearing in the probate court were held *after* this civil complaint was filed. If the matters raised in this civil action were not in fact covered by his existing objections in the probate court, Moxley had an opportunity to amend those objections and obtain any appropriate continuances. Thus, in *Diaz v. Duncan,* (1980) Ind.App., 406 N.E.2d 991, this court held a probate court judge has jurisdiction to continue a scheduled hearing on a final accounting in order to allow written objections to be filed. In *Diaz,* Duncan appeared at the hearing on the final accounting and orally moved to reinstate earlier written objections which had been stricken. Although the motion was denied by the judge because the objections were not specific, the judge, as was his custom, continued the hearing to a later date to permit the filing of specific written objections. This court, in commending the judge's action, cited the principle that in matters relating to the filing of objections

"strict formality is not required . . . and the court, in passing upon such matters, should be more observant of substance than of form. *Goodbub v. Hornung's Estate,* [ (1891) 127 Ind. 181, 26 N.E. 770] at 185 of 127 Ind. at 771 of 26 N.E."

*Diaz v. Duncan, supra* at 1003. Moxley's complaint in this civil case, allegedly raising new matters, was filed more than two weeks before the hearing again proceeded on the final accounting. Thus, there was ample opportunity for presentation and review of any alleged new matters not raised in the original objections to the probate court, and had the probate court denied Moxley an opportunity to fairly present such objections, it would have been, in our opinion, a clear abuse of discretion and a violation of the judge's duty of:

genuine issue of fact before the court on these allegations.

In the complaint itself, Moxley alleged mismanagement of his Gilpin stock and Mooney-Kiefer-Stewart notes, and the wrongful sales of commercial property in which he had a partial interest, his residence and Scott Carey stock. He also alleged the Bank failed to borrow on insurance to save interest. He maintained the Bank was liable because large amounts of his tangible property (household goods) were lost, destroyed, stolen or damaged. He contended the Bank conspired with its attorneys to terminate a life insurance trust claiming ownership of the insurance. He alleged distress in his body, mind and spirit resulting in damage of $700,000 because his home was sold forcing him to live in an apartment. He contended the Bank's conduct toward him was oppressive. Finally, he maintained the Bank confined him to a nursing home which was "wholly unsuitable for a person of David Moxley's mentality, education, training and circumstances. He was required to share a room with a sick person of subnormal mentality and loathsome living habits." These items were raised by Moxley either in his interim objections (Gilpin stock, notes, commercial property, residence, Scott Carey stock, insurance ownership and interest costs) or in his final objections (Gilpin stock, notes, interest costs, tangible property and nursing home). Some were raised in both.

After considering Moxley's objections, the Bank's responses and evidence from the eight days of hearings, the probate court in the judgment concluded:

"By acting as is set forth in the Findings of Fact, the Guardian exercised the judgment and care under the circumstances then prevailing which men of prudence, discretion and intelligence exercise in the management of their own affairs, in the management of the Estate and the person of the ward."

The probate court had not only this general conclusion, but also set forth specific findings and conclusions on these items. In finding number 5, the court concluded the Gilpin stock could not be sold so there was no mismanagement. Finding of fact number 2.21 dealt with the Mooney-Kiefer-Stewart notes. According to conclusion 7, the sale of his residence and the commercial property were approved by the court at the time of the sale, and the Bank met its standard of care. Conclusion 4 stated the Bank acted with proper care in the sale of the Scott Carey stock. The probate court made findings of fact numbers 2.04 and 2.05 on the household goods and concluded the Bank exercised proper care. Finding of fact number 2.26 covered Moxley's insurance, the court finding Moxley had no ownership rights therein. Finally, finding of fact number 2.20 stated Moxley was placed in the nursing home by the order of his physician because it was medically necessary.

"exercising probate jurisdiction to evince vigorous and aggressive honesty in dealing with guardians, administrators, and other trustees, to the end that the trusts reposed in them shall be executed with scrupulous integrity, and that complete confidence may prevail. If that duty is faithfully discharged, no one interested in this estate will ultimately have any reason to complain of the appointment made."

*Haughey v. Haughey,* (1920) 73 Ind.App. 318, 320, 127 N.E. 454, 455.

■ Further, it is well established res judicata includes all matters which were in issue or might have been, *Blake v. Blake, supra; Castor v. Gary Lumber Co.,* (1942) 220 Ind. 260, 41 N.E.2d 945.

"The law is well settled that where matters in issue between the parties to an action were or might have been litigated in a former action, such matters are 'forever at rest.'"

*Mutual Ben. Life Ins. Co. v. Bachtenkircher,* (1935) 209 Ind. 106, 114, 198 N.E. 81, 104. "[A] party is not allowed to split a cause of action pursuing it in a piecemeal fashion and subjecting a defendant to needless multiple suits." *State Highway Commission v. Speidel,* (1979) Ind.App., 392 N.E.2d 1172. As our supreme court said in *Hammond Pure Ice & Coal Co. v. Heitman,* (1942) 221 Ind. 352, 358, 47 N.E.2d 309, 311:

"The judgment in the former case is conclusive and bars a subsequent action if an opportunity was presented to litigate the entire subject matter in the first action."

Numerous Indiana cases support the proposition a final accounting is res judicata in any other suit brought by the ward against the guardian. *Castetter v. State,* (1887) 112 Ind. 445, 14 N.E. 388 (ward brought suit on the guardian's bond for failure to account for money and for conversion of ward's money); *Candy v. Hanmore,* (1881) 76 Ind. 125 (ward sued guardian's estate for money not received after majority); *Holland v. State,* (1874) 48 Ind. 391; *Barnes v. Bartlett,* (1874) 47 Ind. 98 (heir of ward sued guardian for fraudulently deeding property to himself); *Shipman v.*

*Shipman,* (1934) 99 Ind.App. 445, 192 N.E. 849 (administrator of estate sued guardian for making loans to an insolvent person). In *Holland,* for example, the guardian fraudulently submitted a claim for room and board for the ward. The probate court accepted the claim, approved the final accounting and discharged the guardian. Subsequently, the ward filed suit to recover on the guardian's bond for the fraudulent claim. The court held the final settlement precluded another suit:

"The settlement so made by the guardian has not been revoked or reopened, but remains in full force and unappealed from. In such case no action can be maintained upon the bond of the guardian. Such final settlement, unless revoked, or appealed from, is conclusive upon the parties."

*Holland v. State, supra* at 392. It is settled a ward cannot attack a final accounting collaterally. The former ward can either appeal the final settlement or file a direct suit to reopen the final accounting within the statute of limitations. The present statute allows a ward one year to bring suit to reopen the final accounting. Ind.Code 29–1–18–49. Moxley has perfected an appeal of the final accounting which is pending in this court, but he is barred by res judicata from pursuing this suit here against his former guardian. Similarly, a final settlement of an estate "is conclusive on interested parties until set aside by appeal or proceeding brought for that purpose," and such estate settlement cannot be collaterally attacked. *McGahan v. National Bank of Logansport,* (1972) 151 Ind.App. 658, 281 N.E.2d 522, 524–25.

■ Finally, as a last argument pertaining to whether Moxley's civil complaint stated matters not litigated in his probate action, Moxley maintains the court had jurisdiction only to correct math errors and/or omissions of the guardian's final account. This argument is, of course, without merit for it is well settled that jurisdiction rests in a probate court to hear all matters affecting discharge. In the recent case of *Matter of Estate of Kingseed,* (1980) Ind.

App., 413 N.E.2d 917, where the issue of the limited scope of a final accounting was raised, the appellant argued the judge had authority only to approve or disapprove a final accounting. After finding the probate court's authority extended to all matters affecting discharge, the court concluded any charges of negligence, wilful acts or nonfeasance resulting in a loss to the estate by the fiduciary must be resolved in that accounting. *Id.* at 921:

The statute which established the Marion Superior Court granted it:

"[o]riginal and exclusive jurisdiction in *all matters pertaining to the probate* and *settlement of* decedent's estates, trusts and *guardianships....*"

Ind.Code 33–5–35.1–4 (emphasis added). In addition, the probate code provides:

"[T]he jurisdiction of the court having probate jurisdiction over all matters of guardianship, other than guardianship ad litem, shall be exclusive, subject to the right of appeal."

Ind.Code 29–1–18–4. Therefore, the probate court had the authority to hear all matters pertaining to the fidiciary relationship between the Bank and Moxley. From the foregoing authority we must conclude, the probate court had jurisdiction to adjudicate all matters between Moxley and the Bank including those complained of in this civil action.

■ Moxley also contends another element of res judicata—the identity of parties—is not present. First, he claims the parties are reversed, acknowledging that in the probate court the Bank was the plaintiff and he, the objector-defendant. In this action, of course, the parties are reversed. He cites in support for his position the case of *Jones v. Vert*, (1889) 121 Ind. 140, 22 N.E. 882, in which the court held a previous action where parties were named co-defendants was not res judicata in a later action where the parties were adversaries. It should be noted, however, that in *Jones v. Vert, supra*, the parties were not adversaries in the first cause, there being no cross-claim litigated, and thus the case is not applicable. We consider Moxley's argument to be specious. As noted earlier, a necessary element of res judicata requires the particular controversy adjudicated in the former action to have been "between the parties to the present suit." *Blake v. Blake, supra* at 851. Our supreme court has more specifically defined the rule concerning identity of parties as it relates to the doctrine of res judicata in *Schwegman v. Neff,* (1941) 218 Ind. 63, 67, 29 N.E.2d 985, 986, where it stated:

[I]t is necessary that the parties as between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action. 34 C.J., Judgments, § 1405 This is necessary to the end that the constitutional guaranty that no man shall be deprived of his property except by due process of law shall be preserved."

*Id.* The language of the foregoing authorities does not require the parties to have been in the identical plaintiff-defendant posture in both causes. Moreover, as stated in 50 C.J.S. *Judgments* § 767 (1947) "Parties of record are bound regardless of their position on the record as plaintiffs or defendants." Moxley presents us no authority for his novel and illogical contention in this regard.

Further, concerning the alleged lack of identity of parties, Moxley maintains the status or relationship is not the same in this action as in the action explaining that the Bank is no longer his guardian and he no longer a ward. We find Moxley is factually mistaken in this contention. In the probate action, the guardian-ward relationship was terminated on January 17, 1979, and it was *after* such termination Moxley proceeded to file objections to the accounting and litigated these issues. Thus, Moxley was not a ward at the time of the probate action, but was acting as he is in this action, as a legally competent individual suing a former guardian for alleged deeds of misconduct relating to their previous fiduciary relationship.

Finally, Moxley makes the additional contention that there was no res judicata effect because the first suit was an accounting and the present one a tort action. It is well settled in Indiana that the court will look at the nature or substance of the cause of action rather than the form. Our supreme court in *Lieb v. Lichtenstein,* (1890) 121 Ind. 483, 488, 23 N.E. 284, 286 stated:

> "It is not necessary that the form of the action shall be the same in both cases in order for the former to be a bar to the latter. It is sufficient if the question in controversy has been once litigated between the same parties."

*Id.* In an even earlier case, *Cutler v. Cox,* (Ind.1828) 2 Blackf. 178, the first action was in contract while the second suit alleged deceit and fraud. The court held the first action barred the second.

We conclude the probate court made a decision on the merits of the objections to the final accounting between the Bank and Moxley. This decision was rendered after providing an ample opportunity to both parties to fully litigate all issues between them. Because these questions were adjudicated by the probate court, the granting of summary judgment for the Bank was proper.

Finding no error by the trial court, we affirm.

CONOVER, J., concurs.

NEAL, J. (sitting by designation), concurs.