Jones v. Jones.

No. 13,647.

JONES v. JONES.

DECEDENT'S ESTATE.— *Final Settlement.— Notice.— Jurisdiction.— Collateral Attack.*—The filing of his final account by an administrator confers jurisdiction upon the court to hear all matters pertaining or incidental to the final settlement of the estate, and where notice has been given of such filing by the, clerk, however defective in form, the action of the court in the final settlement and distribution of the surplus can not be attacked in a collateral proceeding.

SAME.—*Distribution of Surplus to Heirs.—Practice.*—Jurisdiction over the subject of distribution of the surplus of an estate to the heirs results as an incident to the final settlement, without additional notice, and while issues may be formed upon adverse claims growing out of distribution, it is not essential that they should be.

From the Montgomery Circuit Court.

*W. B. Herod* and *G. D. Hurley,* for appellant.

*T. H. Ristine, H. H. Ristine, P. S. Kennedy* and *S. C. Kennedy,* for appellee.

NIBLACK, C. J.—Complaint by the appellant, Cornelius Jonès, against the appellee, Oliver H. Jones, in four paragraphs.

The first paragraph was for the sum of five hundred dollars as money had and received for the use of the appellant.

The second averred that the appellee had, on the 14th day of December, 1881, fraudulently caused and procured the rendition of a judgment in the court below against the appellant assuming to establish the fact that he was the assignee of his, the appellant's, distributive share in his father's estate, which was then being settled, and which distributive share was of the value of two hundred dollars; that the appellant, never at any time assigned his said distributive share in his father's estate to the appellee; that no paper or pleading had been filed in said court setting forth or alleging that such distributive share had been so assigned to the appellee; that

the appellant had no notice whatever that the appellee claimed to be the assignee of, or to have any interest in, such distributive share; that the appellant was never notified to appear in court at the said final settlement of his father's estate, but the appellee fraudulently and wrongfully, and with the intent to cheat the appellant, procured the judgment hereinabove stated to be rendered.

The third charged that the appellant and appellee were brothers, both being the sons of one Daniel S. Jones, deceased, and that, as such sons, they were both heirs at law of their said deceased father, whose estate was finally settled on the 14th day of December, 1881; that upon the final settlement the administrator of such estate paid to the clerk of the court the sum of sixteen hundred dollars belonging to the heirs at law of said decedent, of which sum the appellant was entitled to receive one-eight part as his distributive share, but that the appellee wrongfully, unlawfully, fraudulently and corruptly, and without notice to the appellant, and at a time when the court had no jurisdiction of the appellant, and without any authority whatever, procured a judgment to be rendered by the court making such final settlement, adjudging him to be entitled to receive the distributive shares of all the other heirs to the decedent's estate; that, in pursuance of such judgment, the appellee received the sum of two hundred dollars belonging to the appellant.

The fourth was in the form of a common count for an indebtedness in the sum of five hundred dollars, two hundred dollars being for money had and received for the use of the appellant, as stated in the first paragraph, and three hundred dollars being for real estate alleged to have been sold and conveyed to the appellee.

Demurrers were sustained to the second and third paragraphs of the complaint, and the appellee answered what remained of the complaint, in three paragraphs.

The first paragraph was in denial. The second set up the final settlement of the estate of Daniel S. Jones and an ac-

companying order of court adjudging the appellee to be entitled by assignment to receive the appellant's distributive share in the estate.   The third gave in detail the alleged circumstances under which the appellant made the conveyance of his interest in certain real estate, for which the sum of $300 was demanded.

Demurrers were overruled to the second and third paragraphs of the answer, and issue being joined, a trial resulted in a verdict in favor of the appellant for three hundred dollars.   This verdict was, however, on the motion of the appellee, set aside, and a new trial was ordered.

Upon a second trial the verdict and judgment were in favor of the appellee.

Questions were reserved below, and are presented here, first, upon the rulings on the pleadings; secondly, upon the setting aside of the first verdict; and, thirdly, upon the refusal of the court to grant a new trial after the return of the second verdict.

As the merits of the controversy were more fully made to appear by the evidence than by the pleadings, we will first give a synoptical statement of the material facts established at the trial:

Daniel S. Jones, late of Montgomery county, died intestate, on or about the 1st day of July, 1880, leaving eight or nine children, to whom his estate, consisting of both real and personal property, descended.   The appellant and appellee constituted two of these children.   During the same month letters of administration were granted upon the estate to William H. Stewart.   There came into Stewart's hands, as a part of the assets of the estate, several promissory notes executed by the appellant, aggregating the sum of $954.92. About the 30th day of October, 1880, Stewart, the appellant and the appellee, and some of the other children of the decedent, had a meeting to consult about the business of the estate, at which an informal agreement was reached, to the effect that the appellant should convey to his brothers and sisters

all interest in the real estate of their said late father, consisting of several small tracts or lots of land, and that Stewart should thereupon surrender to the appellant the notes so held by him as assets of the estate. The appellant, with his wife, accordingly, on the 1st day of November, 1880, executed to his said brothers and sisters a deed conveying to them all his interest in such real estate, and his notes were thereafter surrendered to him by Stewart. The appellant, nevertheless, claims that after the meeting with Stewart and others referred to, the appellee, as a further inducement to execute a deed conveying his, the appellant's, interest in the real estate in question, promised to pay him the additional sum of three hundred dollars, and this claim comprises a part of the demand for which this action is prosecuted.

On the 26th day of November, 1881, Stewart filed with the clerk of the Montgomery Circuit Court his account for final settlement of the estate, showing a balance in his hands for distribution in the sum of $1,465.09, which was afterwards paid to the clerk to await the final order of the court in the premises. The clerk fixed the 14th day of December, 1881, as the day on which the account would be heard, and gave notice, as required by section 2390, R. S. 1881, to the creditors, heirs and legatees of the decedent to appear in court on that day and show cause why the account should not be approved, of the giving of which notice full proof was made before any action was taken on the account.

On the day last named the account was referred to a master commissioner, who reported that it was, in all things, correct, and recommended that Stewart be discharged from his trust; also, that the appellee had become the purchaser of the interests of all the other heirs at law in the estate, and had thus become entitled to receive the entire amount of money which had been paid to the clerk as above for distribution.

No objection being made either to the account or to the report of the master commissioner, the former was approved,

and Stewart was discharged and the estate was declared to be finally settled. To this the following was added:

"It is further ordered, adjudged and decreed by the court that Oliver H. Jones is the owner in his own right and by assignment of all the distributive shares of said estate, and the clerk of this court is hereby ordered and directed to pay over to him the said sum of fourteen hundred and sixty-five dollars and nine cents, deducting therefrom the fee of said master commissioner, taxed at $2.50, and that he take his receipt for the same on the order-book of this court."

In pursuance of this last named order, Oliver H. Jones, on the 2d day of January, 1882, received from the clerk the sum of $1,462.59, the balance due on all the distributive shares referred to, and executed to him a receipt for the amount entered upon the proper order-book of the court.

The appellant afterwards set up a claim that he had never either sold or assigned his distributive share in the estate to the said Oliver H. Jones, and, on the 25th day of March, 1886, commenced this action to recover from the latter the amount of such distributive share, as well as the sum of $300 demanded in payment for real estate as hereinabove stated. As to the claim for the distributive share, the action was instituted, and the appeal to this court is prosecuted, upon the alleged ground that the Montgomery Circuit Court had no jurisdiction to order its payment to the appellee, and that hence the order requiring the clerk to pay it to him was inoperative and void:

*First.* Because no petition or other pleading was filed by the appellee making a claim to such distributive share, which was necessary to confer jurisdiction over the subject-matter of such a claim.

*Secondly.* Because no notice was given to the appellant requiring him to appear and answer such a claim, or that such a claim would be made.

*Thirdly.* Because the appellant was not in any manner

made a party to the proceedings which resulted in making the order.

These objections to the validity of the order under consideration are based upon the assumption that the filing of the account for final settlement did not confer upon the court jurisdiction to inquire into and to adjust any claim to a distributive share in the surplus of the estate, and that, in consequence, the notice given by the clerk requiring the heirs of the decedent to appear and show cause why the account should not be approved, could not have been construed to be also a notice to appear to proceedings having reference only to the surplus remaining for distribution after final settlement.

Section 2390, above referred to, is as follows: "Upon the filing of such account, the court, or clerk in vacation, shall fix a day in term, to be endorsed on the account, not less than three weeks from the date of filing, when the account will be heard, and shall cause notice to be given by the clerk to the creditors, heirs, and legatees of the deceased to appear in court on such day, and show cause why such account should not be approved; which notice shall be given by publication in some public newspaper published in the county in which the administration is pending, and by posting at the court-house door, for two successive weeks. If such account be filed for final settlement, such heirs shall be notified, in addition, to appear and make proof of their heirship to the estate."

Section 2391 provides that, upon the giving of such notice, the court shall, on the day fixed, proceed to hear the account, or may refer the same to a master commissioner for a hearing, where any person interested in the estate may appear and contest the correctness of the account.

Section 2392 further provides that, if the moneys on hand shall be sufficient to pay all claims against the estate and expenses of administration, and there remains no claim pending for allowance, and no debt due the estate for collection, the court shall enter an order for the final settlement of the

estate, for the payment of unpaid claims, and the distribution of the residue to the heirs and legatees of the decedent.

By section 2406 a master commissioner is authorized to hear proof of heirship, or of other title to the surplus remaining for distribution.

It does not affirmatively appear by the record of final settlement read in evidence in this case that the notices published and posted by the clerk also notified the heirs of the decedent to appear and make proof of their heirship to the estate, but it is shown by that record that after the proofs of the notices given were presented, it was held by the court that the proofs were sufficient, and that notices had been published and posted as required by law.

The filing of his final account by Stewart conferred upon the Montgomery Circuit Court jurisdiction to hear and determine all matters pertaining or incidental to the final settlement of the estate, and the notices of the filing of the account read in evidence were sufficient to bring the appellant constructively into court, and to require him to take notice of the proceedings taken upon the account. Being thus constructively in court, he was chargeable with notice of all that occurred as incidental to, or as immediately connected with, the final settlement. No subsequent petition or pleading was necessary to give the court jurisdiction of the matter of the distribution of the surplus. Jurisdiction over that subject resulted as an incident to the final settlement, and the hearing of claims to the surplus of an estate is usually a very summary and informal proceeding. Issues may be formed upon adverse claims of that character, but in a jurisdictional sense it is not essential that they shall be.

As has been shown, the master commissioner in this case, when he reported upon the correctness of the final account, also reported that, in his own right, and as a purchaser from the other heirs, the appellee was entitled to receive the entire surplus of the estate.

The inference, therefore, ought to be, that both of the sub-

jects mentioned in his report were referred to him for his examination by the court, and that he properly heard evidence concerning claims to the surplus in connection with other matters pertaining to the final account. Being constructively in court at the time the account was referred to the master commissioner, the appellant can not be heard to deny that he had notice of the proceedings before that officer.

If the notices given by the clerk were in fact defective in not notifying the heirs to appear and make proof of their interests in the estate, and if by reason of such defective notices the appellant was misled to his prejudice, these circumstances might have afforded good grounds for a review or a reversal of the order directing the appellant's distributive share in the estate to be paid to the appellee; but where some notice has been given, however defectively, and the court having jurisdiction of the subject-matter of the proceeding has held the notice to have been sufficient, the judgment which followed can not be attacked collaterally, either upon the ground that there was no notice, or that the notice was fatally defective. See *Kleyla* v. *Haskett,* 112 Ind. 515, and authorities cited.

The evidence, therefore, failed to establish the appellant's right to recover from the appellee any part of the money received by the latter from the clerk under the order of the court hereinabove set out. As regards the additional claim on account of the conveyance of real estate, the evidence was conflicting, and not at all conclusive in favor of the appellant.

As to that branch of the case, there was evidence fully sustaining the verdict returned at the last trial. We can not, consequently, disturb that verdict upon the evidence.

The evidence given at the first trial is not in the record. For that reason no available question is presented upon the setting aside of the verdict rendered at that trial.

The allegations of fraud and want of jurisdiction contained in the second and third paragraphs of the complaint were

too general, indefinite and uncertain to be effective as collateral attacks on the order directing the payment of all the distributive shares in the estate to the appellee. These paragraphs were, therefore, bad upon demurrer. *Mannix* v. *State, ex rel., ante,* p. 245.

It follows, from what we have said, that the second paragraph of the answer was sufficient as an answer to the first paragraph of the complaint. The third paragraph of the answer was nothing more than an argumentative denial of a part of the fourth paragraph of the complaint. If, therefore, the circuit court erred in overruling the demurrer to that paragraph, it was a harmless error.

Other questions were reserved at the trial, and have been referred to in argument, but the view we have taken of the questions already considered by us practically disposes of all remaining questions.

The judgment is affirmed, at the costs of the appellant.

Filed Sept. 26, 1888.