John S. DIAZ, Administrator with Will Annexed of the Estate of Christina S. Shannon, Deceased and Genevieve A. Lawson, Appellants,

v.

Suzanne DUNCAN and Gregory Scott Duncan, Appellees.

No. 3–1178A298.

Court of Appeals of Indiana, Fourth District.

June 30, 1980.

---

Diaz, Moore & Mishler, Portage, for appellants.

John P. Bushemi, Merrillville, for appellees.

MILLER, Presiding Judge.

■ Appellant John S. Diaz,[1] Administrator with Will Annexed of the Estate of Christina B. Shannon, appeals from the trial court's judgment in favor of two heirs, Suzanne Duncan and Gregory Scott Duncan, Appellees herein, which judgment sustained four of their six objections to the proposed Final Accounting and Final Distribution of the assets in the estate.

We affirm.

The decedent, Christina Shannon, who died on April 7, 1977, had two daughters during her lifetime, Genevieve Lawson and Christine Weiler. Christine Weiler died in February 1975 with her daughter, Suzanne Duncan, and grandson, Gregory Scott Duncan, surviving her. On May 11, 1977 the deceased's last will and testament was admitted to probate and John Diaz appointed administrator with the will annexed. On

---

1. Genevieve A. Lawson is named a party in the caption of this appeal and in Appellant's brief. The record does not reveal she participated as an adversary in the proceedings before the trial court and, of course, did not file a motion to correct error. We do not consider her a proper party this appeal. Indiana Rules of Procedure, Appellate Rule 2(B). If Mrs. Lawson had been a party in the trial court and had elected not to appeal, thus indicating her satisfaction with the judgment construing the will, Diaz would have lacked standing to perfect this appeal. Such was not the case and, therefore, Diaz is a proper party appellant. *Estate of Kuhn v. Kuhn*, (1970) 148 Ind.App. 528, 526 N.E.2d 701.

March 31, 1978 Diaz filed his report in final settlement of the estate and, after the Duncans filed written objections thereto, a hearing was held on August 9, 1978. The trial court sustained four of the Duncans' six objections and ordered distribution of the decedent's estate accordingly. Essentially, the court held the Duncans were entitled to the value of the specific bequests in the will which had been converted to other property during the guardianship of decedent created approximately six months before her death. Diaz raises the following issues:

1. Did the trial court err in ordering the funds received by the estate from two guardianship accounts of the decedent distributed according to the specific bequests of her will and, further, in applying the anti-lapse statute to the residue?

2. Did the handwritten insertion in the will of the word "Great" before the typed language "grandson Gregory Scott Duncan" void the provision as to Gregory Scott Duncan or, in the alternative did the fact that the specific bequest to Gregory Scott Duncan appeared in the will after provision had been made for distribution of the residue of the estate render such bequest void?

3. Did the trial court err in granting a continuance of the hearing on the administrator's final account and proposed distribution in order to allow the Duncans to file objections?

*Distribution of the Guardianship Accounts*

The Last Will and Testament of Christina B. Shannon provided:

"I, Christina B. Shannon, at this time a resident of Hobart, Lake County, Indiana, and being of sound and disposing mind and memory, do make, publish and declare this to be my Last Will and Testament, hereby revoking all former wills by me made:

Item 1. I request that all of my debts and funeral expenses be paid.

Item 2. I give and bequeath to my daughter Christine Weiler the following-named real estate and personal property, viz,

(a) The real estate known as 605 West Third Street, in Hobart, Indiana.

(b) All of my household furniture, goods and effects, except the bedding.

(c) My fur coat.

(d) One-half of the money in the U.S. Steel Corporation (Gary Works) Merchant Mill Credit Union.

(e) One-half of the money in my checking account.

(f) All of the money in our joint bank accounts.

(g) One-half of the rest, residue and remainder of my estate not disposed of by this my Will.

Item 3. I give and bequeath to my daughter Genevieve A. Lawson the following-named personal property, viz,

(a) The bedding in my home at 605 West Third Street, Hobart, Indiana.

(b) One-half of the money in my checking account.

(c) One-half of the money in the U.S. Steel Corporation (Gary Works) Merchant Mill Credit Union.

(d) One-half of the rest, residue and remainder of my estate not disposed of by this Will.

Item 4. I give and bequeath to my Great[2] grandson Gregory Scott Duncan all of my shares of U.S. Steel Corporation stock.

Witness my hand and seal this 15th day of Sept., 1969.

/S/ Christina B. Shannon"

Before Mrs. Shannon's death on April 7, 1977 two events of significance occurred. Her daughter, Christine Weiler, the devisee under Item 2 of the will, died in February, 1975. Secondly, less than six months before Mrs. Shannon's death, on November 10, 1976 she was declared incompetent and a guardian of her real and personal property appointed. The guardian, Genevieve Law-

---

**2.** The will was typewritten. The word "Great" was a handwritten insert.

son, opened two guardianship bank accounts to which she transferred the credit union account ($8,082.48), proceeds from her joint savings account[3] in Hobart Federal Savings and Loan Association ($9,039.39) and the proceeds from the sale of 198 shares of U.S. Steel Corporation stock ($9,145.12) for a total of $26,266.99. There is no record that any other accounts, such as checking accounts, existed at the time the guardianship was opened.

In his final account, Diaz reported to the court he had available for distribution, after adjustments for receipts and disbursements during distribution, assets in the amount of $58,843.49, which consisted of real estate with a value of $25,000.00 and $33,843.49 in cash. Significantly, in his final account and proposed distribution, Diaz honored the provisions of the Indiana anti-lapse statute, Ind.Code 29–1–6–1(g)(2), by acknowledging Suzanne Duncan was entitled to the real estate (Item 2(a)), the household furniture, goods and effects (Item 2(b)) and the deceased's fur coat (Item 2(c)) as the surviving descendant of the original legatee Christine Weiler, her mother, who had predeceased the testator. However, he disregarded both the anti-lapse statute and Ind. Code 29–1–18–44, (which preserves the right of a legatee to take the value of property specifically bequeathed him where such property has been sold or transferred by a guardian) by proposing that all of the remaining personal property consisting of $29,219.59 be distributed to Genevieve Lawson as the surviving residuary legatee. He requested the court to make the following distribution:

"PROPOSED PAYMENT OF ATTORNEY FEES AND FINAL DISTRIBUTION

| | |
|---|---|
| Diaz, Moore & Mishler, Attorneys: attorney fees for estate ........ | $ 4,523.90 |
| Suzanne Duncan, Hobart, Indiana: final distribution .............. | 25,100.00 |
| Real Property $25,000.00 Personal Property 100.00 | |
| Genevieve Lawson, Gary, Indiana: final distribution .............. | 29,219.59 |
| Personal Property: $29,219.59 | |
| TOTAL PAYMENT OF ATTORNEY FEES and FINAL DISTRIBUTION ................... | $58,843.49" |

The trial court, after hearing, took a different view and honored the specific bequests to Suzanne Duncan and Gregory Scott Duncan despite the intervention of the guardianship transfers. Further it applied the anti-lapse statute to the residuary and granted Suzanne Duncan half thereof. After adding an inheritance tax refund of $613.49 to the assets remaining for distribution, he directed distribution to be made as follows:

| | |
|---|---|
| "New Total assets for distribution | $59,456.59 |
| Distributable: | |
| To attorney fees | $ 4,523.90 |
| To Suzanne Duncan: | |
| Item 2(a) of Will [real estate] | 25,000.00 |
| Item 2(b) & (c) of Will [household furniture & goods & coat] | 100.00 |
| Item 2(d) of Will [½ of credit union account] | 4,041.24 |
| Item 2(f) of Will [savings and loan account] | 9,039.39 |
| Item 2(g) of Will [½ of residue] | 1,782.85 |
| TOTAL | $39,963.48 |

subject to inheritance tax thereon.

| | |
|---|---|
| To legal guardian of Gregory Scott Duncan, a minor | |
| Item 4 of Will [U. S. Steel Stock] | 9,145.12 |

subject to inheritance tax thereon.

| | |
|---|---|
| To Genevieve Lawson: | |
| Item 3(c) of Will [½ of credit union account] | 4,041.24 |
| Item 3(d) of Will [½ of residue] | 1,782.85 |
| TOTAL | $ 5,824.09 |

subject to inheritance tax thereon.
The administrator is directed to file amended inheritance tax schedule."

Directing our attention first to the claim by Diaz that the trial court improperly distributed the savings and loan and credit union accounts, we find Diaz challenged

---

**3.** At the time of transfer to the guardianship accounts, this account was held jointly by the deceased and Suzanne Duncan.

such distributions in his Motion to Correct Errors solely on the basis that there was no evidence showing the existence of such accounts at the time of decedent's death.[4] Here, Diaz seeks to invoke the doctrine of ademption which was defined and explained *In re Estate of Brown*, (1969) 145 Ind.App. 591, 604, 252 N.E.2d 142, 150–51, as follows:

"The definition of ademption most generally accepted by the courts, in substance, is the one set out in 96 C.J.S. Wills § 1172, p. 985, which reads as follows:

'"Ademption" is the term used to describe the act * * * by which a specific legacy has become inoperative because of the withdrawal or disappearance of its subject matter from the testator's estate in his lifetime.'

"See also: Words and Phrases, Vol. 2, perm. ed., p. 532, and cases cited.

"When the ademption of a specific legacy occurs, the specific legacy is completely voided."

However, Diaz, in his briefs before this Court, makes no mention of Ind.Code 29–1–18–44, a statute concerning guardianships of incompetents, the provisions of which are applicable in this cause and preclude the ademption of the specific legacies in question. This statute reads:

"In case of the guardian's sale or other transfer of any real or personal property specifically devised by the ward, who was competent at the time when he made the will but was incompetent at the time of the sale or transfer and never regained competency, so that the devised property is not contained in the estate at the time of the ward's death, the devisee may at his option take the value of the property at the time of the ward's death with incidents of a general devise, or the proceeds thereof with the incidents of a specific devise."

■ Diaz does not suggest the testatrix was incompetent at the time she executed her will or that she was not placed under a guardianship of the estate wherein the guardian transferred the accounts which constituted the specific legacies to guardianship accounts. Further it is not contested that the testatrix did not regain her competency and the specific accounts were not in the estate at the time of the testatrix's death. Thus, all the necessary elements rendering the statute operative were established in the trial court. We conclude the transfer of the accounts by the guardian did not work an ademption even though a transfer by the testatrix if competent would have done so and, therefore, Suzanne Duncan was entitled to her interest in the accounts as provided in the will and as distributed by the trial court. *See Henry's Probate Law and Practice*, Volume 2 (6th Ed.) 1978 Cumulative Supp. Chapter 26, § 15.

■ Diaz makes a further vigorous argument challenging the disposition of the savings and loan account[5] pointing out that Item 2(f) purported to convey money in joint "bank" accounts and not savings and loan accounts. He urges that a bank depositor is a creditor of the bank while depositors in a savings and loan association are actually shareholders thereof. Thus, he claims the savings and loan account does not qualify as a "bank" account and the

---

4. Diaz alleged in such Motion:

"5. The judgment is contrary to law in that the Court ordered distribution of $9,039.39 to SUZANNE DUNCAN pursuant to Item 2(f) of the Last Will and Testament of CHRISTINE B. SHANNON notwithstanding the fact no evidence of the existence of *bank* accounts, joint or otherwise, at the time of decedent's death was introduced at trial.

"6. The judgment is contrary to law in that the Court ordered distribution of $4,041.24 each to SUZANNE DUNCAN and GENEVIEVE LAWSON pursuant to Items 2(d) and 3(c) respectively of said Last Will and Testament notwithstanding the fact that the evidence introduced by objectors was insufficient to prove the existence of credit union accounts at the time of decedent's death."

5. Suzanne Duncan does not argue the possibility that, since this was a joint account before being transferred by the guardian, it retained its joint tenancy character at the death of the testator, thus entitling her to the proceeds of the account. See *Estate of Morrow v. Owensby*, (1977) 91 N.M 81, 570 P.2d 912; *State v. Gralewski's Estate*, (1945) 176 Or. 448, 159 P.2d 211; *Doran v. Hibernia Savings & Loan Soc.*, (1947) 80 Cal.App.2d 790, 182 P.2d 630.

trial court's consideration of it as such was contrary to law.[6] But we need not decide this issue for, as noted earlier, the Motion to Correct Errors attacked the distribution of this account solely on the basis that the account did not exist at the time of the testator's death. Thus his present complaint was not called to the attention of the trial court and now is raised for the first time on appeal. It is well settled that a complaining party has a duty to state an alleged error with specificity in his motion to correct errors to permit the trial court to review the exact legal issue involved. Such was the requirement of Ind.Rules of Procedure, Trial Rule 59(B), and unchanged in TR. 59(D)(2), effective January 1, 1980, and failure to comply waives the claimed error. *Johnson v. State*, (1975) 167 Ind.App. 292, 338 N.E.2d 680.

■ Diaz next claims the trial court improperly applied the anti-lapse statute to the residue of the estate and thereby erred in awarding Suzanne Duncan, the daughter of Christine Weiler, one-half of said residue. He claims it is settled in this State that where a residuary legatee dies prior to the death of the testator the lapsed bequest goes to the remaining residuary legatees, citing *Carey v. White*, (1955) 126 Ind.App.

418, 126 N.E.2d 255. Since Christine Weiler died before the death of the testator it must follow, he asserts, that Genevieve Lawson is entitled to the entire residue which amounted to $3,565.70. We disagree.

Our anti-lapse statute, Ind.Code 29–1–6–1(g)(2) provides:

"Whenever any estate, real or personal, shall be devised to any descendant of the testator, and such devisee shall die during the lifetime of the testator, whether before or after the execution of the will, leaving a descendant who shall survive such testator, such devise shall not lapse, but the property so devised shall vest in the surviving descendant of the devisee as if such devisee had survived the testator and died intestate. The word 'descendant' as used in this section shall include the children adopted during minority by the testator and by his descendants and shall also include descendants of such adopted children. 'Descendant' shall also include illegitimate children of the mother, and shall also include illegitimate children of the father, if, but only if, such child's right to inherit from such father is, or has been, established in the manner provided in section 207 [29–1–2–7] of this [Probate] code. This rule shall apply

---

**6.** In construing an inheritance tax statute to determine whether a savings and loan account constituted a "bank account" within the meaning of a statute which exempted bank accounts from the usual method of determining inheritance tax, the Supreme Court of Colorado found no material difference in the accounts and concluded:

"It is presumed that legislators use words in their natural, ordinary, and commonly understood meaning. In applying the statutes before us, we must, therefore, look to the realities of the situation and determine whether the deposit in question is a bank account within the ordinary and commonly understood meaning of the words. Viewed in this light, we can find no material difference to the depositor between a savings deposit made in a savings and loan association and one made in a so called 'commercial' bank. One who opens a savings account in a 'commercial' bank takes his money to a bank and applies for an account. He is given a deposit book and makes his deposit. If his money is in the account for a required period of time, he is paid a specific amount of inter-

est on his deposit. If he desires to withdraw his money, he goes to the bank, fills out a withdrawal slip and his money is returned to him. Our examination of the by-laws in evidence here shows that exactly the same things are true of the deposits made in the savings and loan institution in question here. Generally, deposits in both institutions have the same characteristics.

For the purpose of receiving, safeguarding and disposing of the monies entrusted to it by the depositors, the functions of the savings and loan company are so closely parallel with those of a 'commercial' bank that we have no hesitancy in holding that deposits in a savings and loan association, for the purpose of this statute, are within the meaning of the term 'bank account.' We see nothing in comparing these two accounts which would indicate to us that the Legislature intended to distinguish between savings deposits in a 'commercial' bank and those in a savings and loan institution for the purpose of determining the taxable interest which passed."
*People v. Becker*, (1966) 159 Colo. 562, 413 P.2d 185, 186.

where the parent is a descendant of the testator as well as where the parent is the testator. Descendants of such illegitimate children shall also be included."

The word "descendant" as used in this statute has been defined as referring:

"[E]xclusively to a lineal descendent, as a child or a grandchild. A descendant, as usually understood, is an heir in the direct descending line. The word as used in the statute to prevent, in a certain contingency, the lapse of a devise, does not apply to kindred of the collateral line."

*West v. West*, (1883) 89 Ind. 529, 531. Both Christine Weiler and Suzanne Duncan were, of course, lineal descendants of the testator and Suzanne Duncan's rights were protected by the anti-lapse statute. Initially we point out that *Carey v. White, supra*, urged as supporting Diaz's theory, is clearly distinguishable from our situation. In that case the residuary legatees were the decedent's brother-in-law, sister-in-law and niece, all non-descendants. The sister-in-law predeceased the testator and the trial court found the share bequeathed to the sister-in-law in the residuary clause passed in equal shares to the remaining residuary legatees. The trial court further found the sister-in-law not to be a descendant of the testator. On appeal, against the challenge the bequest to the sister-in-law passed to the decedent's heirs at law as intestate property and by virtue of the law of descent, this Court affirmed the trial court, holding the residuary bequest to the non-descendant sister-in-law had lapsed and the remaining residuary legatees were entitled to her share. The Court did not refer to the anti-lapse statute but such statute was inapplicable to the situation before it as the parties involved were not descendants of the testator.

Where, as in the instant case, lineal descendants are involved, the courts of this State have long recognized the application of the provisions of the anti-lapse statute to the residuary clause. Thus, shortly after the enactment of the 1852 version [7] of the anti-lapse statute, our Supreme Court in *Clendening v. Clymer*, (1861) 17 Ind. 155, held its provisions enabled a grandson of the testatrix, whose mother was a residuary legatee and who predeceased the testatrix, to receive his mother's share of the residue of the estate. And in the case of *West v. West, supra*, cited in *Carey v. White, supra*, the residuary clause in the will of the testator, Edwin West, bequeathed the residue of his estate to his four brothers to be shared equally. One of the brothers, Jeremiah, predeceased the testator, leaving surviving him his widow and a child. The widow and child claimed an interest in the residue but our Supreme Court held otherwise, stating at 531 of 89 Ind.:

" 'The general rule is well settled, that where the legatee dies before the testator, the legacy will lapse.' 2 Redfield Wills, p. 157, sec. 8; *Maxwell v. Featherston*, 83 Ind. 339. The only exception in this State to this general rule is found in section 13 of the act relating to wills, being section 2571, R.S. 1881, which reads: 'Whenever any estate, real or personal, shall be devised to any descendant of the testator, and such devisee shall die during the lifetime of the testator, leaving a descendant who shall survive such testator, such devise shall not lapse, but the property so devised shall vest in the surviving descendant of the devisee, as if such devisee had survived the testator, and died intestate.' The contention as to whether the devise to Jeremiah lapsed or went to the appellants or either of them, under the will, arises upon the meaning of the word 'descendant,' in the above statute."

7. The statute, 2 R.S. 1852, ch. 11, § 13, p. 308 read:

"Whenever any estate, real or personal, shall be devised to any [descendant] of the testator, and such devisee shall die during the lifetime of the testator, leaving a descendant who shall survive testator, such devise shall not lapse, but the property so devised shall vest in the surviving descendant of the devisee, as if such devisee had survived the testator, and died intestate." [2 R.S. 1852, ch. 11, § 16, p. 308.]

The court found Jeremiah, a brother of the decedent, not to be a lineal descendant of the testator and that his bequest lapsed. In the case of *Holbrook v. McCleary*, (1871) 79 Ind. 167, the testator's daughter, a residuary legatee, predeceased the testator. The Court, in holding that her share was to be divided equally among the remaining residuary legatees, was careful to note that the daughter had died *without issue*. More recently in *Farmers & Merchants State Bank v. Feltis*, (1971) 150 Ind.App. 284, 276 N.E.2d 204, the Court was called upon to determine whether the bequest to the residuary legatee Roy Lytle who was the brother of the testator and predeceased him, lapsed. After noting the provisions of Ind.Code 29–1–6–1(g)(2) the Court held:

> "It is without dispute that Roy Lytle was not a 'descendant of the testator' and did not leave any descendants surviving the testator. Clearly, the appellants are unable to avail themselves of the above quoted provision of the anti-lapse section of the Indiana Probate Code. In the absence of any benefit from the above quoted anti-lapse statute, the general rule is well-settled that where a bequest is made in a will and the person to whom the bequest is made predeceases the testator, the bequest lapses. This has been and is the rule in Indiana. See *West v. West*, 89 Ind. 529 (1833), *Maxwell v. Featherston*, 83 Ind. 339 (1882) and *Edwards v. Beard*, 77 Ind.App. 478, 132 N.E. 203 (1921)."

Based on the foregoing, Suzanne Duncan was entitled to one-half of the residue of the estate.

*The Bequest of Stock to Great Grandson Gregory Scott Duncan*

Item 4 of the will in question contained the following typewritten provision:

> "I give and bequeath to my grandson Gregory Scott Duncan all my shares of U.S. Steel Corporation stock."

By handwritten insert, the word "Great" was placed before the word "grandson". The court awarded Gregory Scott Duncan

the cash equivalent of the stock ($9,145.12).[8] The objection to this distribution stated by Diaz in his Motion to Correct Errors was:

> "7. The judgment is contrary to law in that the Court ordered distribution of $9,145.12 to GREGORY SCOTT DUNCAN pursuant to Item 4 of said Last Will and Testament notwithstanding the fact that (1) the Last Will and Testament had been altered by person or persons unknown relative to said Item and (2) all of decedent's property was bequeathed in Items 2 and 3 of said Last Will and Testament and nothing remained to be disposed of by Item 4."

No further facts or grounds supported these alleged errors.

With respect to the alleged alteration, Diaz makes numerous arguments in his brief. He first directs our attention to the following language in 2 Page on Wills, § 22.3 (rev. by Bowe and Parker):

> "If the will which is altered by testator after execution is one which is required by statute, to be attested and subscribed by witnesses, interlineations which testator makes after execution, are of no effect unless the will is subsequently re-executed or republished; *and such a will must be admitted to probate as though the interlineations had never been made.*" (Emphasis added)

He next argues that when an unexplained alteration appears on the face of a will the burden is on the proponent of the will to show the alterations were made before the will was executed, where the alteration is material and entirely inconsistent with the original will, and where the original did not disinherit the contestant, but by the altered will the contestant would lose all his rights, citing *In Re Cravens' Estate*, (1952) 206 Okla. 174, 242 P.2d 135 at 137, 138.

Finally he claims that spoliation (an alteration made in the will by one other than the testator and without the testator's consent,

---

8. We note Diaz does not claim, as he did with the bequest to Suzanne Duncan, that the gift of stock was void under the theory of ademption as the stock did not exist at the time of Shannon's death.

2 Page on Wills, *supra* § 22.5) may have occurred in this case, noting that Suzanne Duncan had possession of the will for a period of time. He contends that where spoliation of the will is committed by the beneficiary or one on his behalf it avoids the provision which is altered, citing the following language from *Bohannon v. Tracy,* (1943) 295 Ky. 456, 174 S.W.2d 722, 725:

"A universally recognized principle is that partial spoliation of a will (defined as a change in the wording after execution by one who is neither the testator nor authorized by the testator to make the change) committed by the beneficiary or one acting in his behalf avoids the provision which is thus altered, *if the alteration is material,* as far as his interest is concerned. It does not, however, destroy the interest of other beneficiaries who are not parties to the spoliation, nor does it avoid unaltered provisions in the same will in favor of the spoliator." (Emphasis added)

■■■ We think it apparent that the arguments addressed in Diaz's brief were not specifically stated in his Motion to Correct Errors and, although this Court prefers to decide cases on their merits whenever possible, *Yerkes v. Washington Manufacturing Company, Inc.,* (1975) 163 Ind.App. 692, 326 N.E.2d 629; *Moore v. Funk,* (1973) 155 Ind. App. 545, 293 N.E.2d 534, we cannot countenance the practice by parties of withholding arguments until our review on appeal, thereby denying the trial court an opportunity to examine the specific errors upon which parties will ultimately rely. Thus, Diaz' assertion that the bequest to Gregory Scott Duncan was void because of alteration is waived for failure to comply with TR. 59. *Johnson v. State, supra.*[9]

■■■ Diaz's second attack on the gift of stock is sufficiently stated in his Motion to Correct Errors to direct attention to the fact that the bequest followed provisions in the will disposing of the entire residue of the estate. But we find his claim is specious. He is simply asking us to abandon two very basic principles of will construction. First, "in construing a will the governing factor is the intention of the testator as expressed and shown by the language thereof, and the primary purpose of such construction is to ascertain and give effect to such intention. This is true so long as such intention does not interfere with established rules of law." *Collins v. Held,* (1977) Ind.App., 369 N.E.2d 641, 29 I.L.E. Wills, § 173 (1960); and, second, in construing a will effect should if possible be given to every provision thereof and the will must not be interpreted to render any part meaningless since it is presumed every word is intended by the testator to have some meaning. Thus no provision in the will should be rejected to which a reasonable effect can be given. 29 I.L.E. Wills, § 180 (1960); 80 Am.Jur.2d *Wills,* § 1135 (1975).

■■■ Here the decedent, in items preceding the specific bequest of stock, devised

---

**9.** Even a cursory examination of the arguments of Diaz reveals they have no merit and constitute an attempt to avoid the clear intent of the testatrix. It is uncontested there is only one Gregory Scott Duncan involved in this case and he is the greatgrandson of the testatrix. Diaz does not contend there existed a grandson named Gregory Scott Duncan, which would render ambiguous the intent of the testatrix. Thus, when we disregard the added word "Great" as not part of the document when executed and witnessed, *see* present statute Ind.Code 29–1–5–3 and

*Fletcher Trust Company v. Morse,* (1951) 230 Ind. 44, 101 N.E.2d 658, still the words "grandson Gregory Scott Duncan" positively identify the intended legatee and for the trial court to have held otherwise would have been clearly erroneous. Although we recognize the rule that the word grandchild, standing alone, ordinarily is limited to children of children, it may include a greatgrandchild where, as here, the situation clearly discloses a different intent. 95 C.J.S. *Wills* § 663 (1957); *In re Estate of Taylor v. Union Bank and Trust Company,* (1956) 384 Pa. 550, 121 A.2d 119. Further, immaterial alterations, even though made by a beneficiary, are of no consequence. Annot., 34 A.L.R.2d 619, § 4 at 629, § 18 at 672–73, § 19 at 675–76; 2 Page on Wills, *supra,* § 22.7; and "[c]hanges or additions not altering the legal effect of the instrument made merely for the purposes of superficial improvement or the better to identify property or individuals have been treated substantially as though made before the execution." Annot., 34 A.L.R.2d 619, § 5 at 629–30; 79 Am.Jur.2d *Wills,* § 560 (1975).

half of residue "not disposed of by this, my Will," to each of her daughters. The stock in question was, of course, disposed of by her will. Consequently the clear, plain and unambiguous language of the will revealed the intent of the testatrix not to include the stock in the residue and there is no basis whatsoever to treat Item 4 as meaningless where the intent of the testatrix has been manifested in such a clear manner.

*The Continuance of the Hearing on the Administrator's Final Account and Proposed Distribution*

Diaz contends the trial court erred when, at the date of hearing on his final account and distribution at which all parties were present, the court continued the hearing in order to permit the Duncans to file specific objections to his account and proposed distribution. He cites two provisions of our Probate Code which he claims prohibited the trial court from proceeding as he did. They are:

Ind.Code 29–1–1–10: "Where, pursuant to law, order of court, or the request of the moving party, notice of the filing of any report, account, claim, petition, motion or other pleading to interested persons is required before submission of the same to the court, any interested person, on or before the day set for hearing, may file written objections or answers thereto, and, upon special order or general rule of the court, objections or answers thereto must be filed in writing as a prerequisite of being heard by the court."

Ind.Code 29–1–16–7: "At any time prior to the hearing on an account of a personal representative, any interested person may file written objections to any item or omission in the account. All such objections shall be specific and shall indicate the modification desired."

By way of factual background, earlier in the estate proceedings and at the time of the filing of the administrator's inheritance tax schedule, Suzanne Duncan, apparently noting the proposed distribution by Diaz was not in accordance with the provisions of the will, the anti-lapse statute and the stat-

ute relating to the affect of the transfer of guardianship accounts, filed her objections. The judge struck those objections as being premature, obviously relying on his ability to adjust payment of inheritance taxes at the time final distribution was made. On the day set for hearing on the final account and distribution the Duncans appeared and, by counsel, orally moved to reinstate Suzanne's prior written objections on the basis they were equally applicable to the final account. This motion was denied by the judge because the objections were not specific and the hearing was continued to a later date to permit the filing of specific written objections. In this regard, the judge commented that it was his custom to reset hearings of this nature, when, as here, objecting interested parties did not have specific objections on file.

Diaz earnestly contends the provisions of Ind.Code 29–1–1–10 and Ind.Code 29–1–16–7 deprive the probate judge of jurisdiction to distribute the proceeds of an estate in a manner other than suggested by the administrator if, on the date set for hearing on said proposed distribution, no specific written objections have been filed. He compares this proceeding to a will contest wherein the statute, Ind.Code 29–1–7–17, limits the period within which to contest a will to six months after the same has been offered for probate. After that time, he notes correctly that the trial court does not have jurisdiction to entertain an action contesting the validity of the will or resisting the probate thereof. *Modlin v. Riggle*, (1980) Ind.App., 399 N.E.2d 767; *Squarcy v. Van Horne*, (1975) 163 Ind.App. 64, 321 N.E.2d 858.

We cannot agree the trial court lost its jurisdiction to make a correct determination as to the distribution of this estate merely because specific objections were not on file (or general objections were not permitted to be refiled) on the day originally set for hearing. When the final account was filed by Diaz it conferred upon the Lake Circuit Court jurisdiction to hear and determine all matters pertaining or incidental to the final settlement of the estate.

"No subsequent petition or pleading [is] necessary to give the court jurisdiction of the matter of the distribution of the surplus. Jurisdiction over that subject resulted as an incident to the final settlement, and the hearing of claims to the surplus of an estate is usually a very summary and informal proceeding. Issues may be formed upon adverse claims of that character, but in a jurisdictional sense it is not essential that they shall be."

*Jones v. Jones*, (1888) 115 Ind. 504, 510, 18 N.E. 20, 23; *Goodbub v. Hornung's Estate*, (1891) 127 Ind. 181, 26 N.E. 770.

The administration of an estate implies a complete disposition of its assets and includes the proper payment of money to whomsoever is legally entitled thereto whether it be the creditors, legatees or distributees and until such determination of proper distribution has been made the estate should not be finally settled nor should the personal representative be discharged. *Henry's Probate Law and Practice* Vol. 2, Ch. 27, § 8.

Our Probate Code provides that after a personal representative has rendered his final account and petitioned the court to decree the final distribution of the estate, the trial court shall determine proper distribution of the estate. Ind.Code 29–1–17–2(b) reads:

"(b) In its decree of final distribution, the court shall designate the persons to whom distribution is to be made, and the proportions or parts of the estate, or the amounts, to which each is entitled under the will and the provisions of this probate code, including the provisions regarding advancements, election by the surviving spouse, lapse, renunciation, adjudicated compromise of controversies and retainer. . . . ."

This section places the responsibility for designating the persons to whom distribution is to be made upon the probate court. It does not deny it the right to modify and correct the account and distribution even though *no objections are filed* thereto. Further, the personal representa-

tive is regarded as the trustee or agent appointed by law for the benefit and protection of both creditors and distributees. He bears a heavy burden in this regard for "[i]t is his duty to guard against error in distribution by exercising the greatest possible care to see that all available evidence is fully and truthfully presented to the court in a hearing of a petition for distribution of the estate. (citations omitted)" *Schumacher v. Adams County Circuit Court*, (1947) 225 Ind. 200, 205, 73 N.E.2d 689, 691–92. We do not believe the provisions of either Ind.Code 29–1–1–10 or Ind. Code 29–1–16–7 prohibit the probate judge from resetting a hearing on the personal representative's final account and proposed distribution nor, for that matter, did the failure to file specific written objections by an interested party relieve Diaz of his duty to make a full disclosure to the court of all facts necessary for a proper distribution of the estate. *Schumacher v. Adams County Circuit Court, supra.*

In reaching our conclusion we find the obvious purpose of the Code sections in question is to afford interested parties an opportunity to call the attention of the trial court to possible errors in the personal representative's report and thus aid the judge in distribution of the estate pursuant to the law and according to the wishes of the testator. The legislative purpose would have been defeated had the court failed to reset the hearing. On the other hand, the purpose was here fully accomplished by the judge's action. Thus, we have construed any possible ambiguity in the Code in a manner that will ascertain and effectuate the general intent of our Legislature. *Economy Oil Corporation v. Indiana Department of State Revenue*, (1974) 162 Ind. App. 658, 321 N.E.2d 215.

Finally, under the facts of this case, we believe the trial court had a right to formulate and declare a rule of procedure for the case then before it. Ind.Code 29–1–1–7 provides:

"The court may promulgate rules and forms of procedure for probate proceedings, not inconsistent with the provisions

of this code nor with such rules and forms as are promulgated by the Supreme Court. If in any probate proceeding a situation arises which is not provided for by any statute or rule of procedure, the court may formulate and declare a rule of procedure for that particular case."

Ind.Code 29–1–1–10 and Ind.Code 29–1–16–7 do not provide direction to a trial court when confronted with a dissatisfied interested party who orally objects to the account or has filed written objections which are not specific. These sections contain no negative or prohibitive words nor do they provide penalties under these circumstances. We feel this is a situation anticipated by the Legislature when it included the provisions of Ind.Code 29–1–1–7 and, therefore, the judge's continuance or resetting of the hearing was an appropriate rule of procedure for the particular case before him. The trial judge's ruling was not unlawful but, rather, commendable. He un-doubtedly was cognizant of the principle that "[i]n most matters relating to the filing, examination, and approval or disapproval of [personal representatives' final] reports strict formality is not required. . . and the courts, in passing upon such matters, should be more observant of substance than of form." *Goodbub v. Hornung's Estate, supra*, at 185 of 127 Ind., at 771 of 26 N.E.

The judgment of the trial court is affirmed.

YOUNG, J., concurs.

SHIELDS, J. (by designation), concurs.