In the Matter of the ESTATE OF Mary M. RUNYAN, Deceased.

Max L. DITTO, Individually and as Executor of the Estate of Mary M. Runyan, Deceased, Appellant,

v.

Richard D. MARTIN, Executor–Appellee.

No. 12A04–8910–CV–446.

Court of Appeals of Indiana, Fourth District.

Aug. 13, 1990.

Frank E. Spencer, Indianapolis, James T. Robison, Robison Robison Bergum & Johnson, Frankfort, for appellant.

John David Hoover, Ronald G. Sentman, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for executor-appellee.

MILLER, Judge.

Appellant Max L. Ditto, executor of the estate of Mary Runyan, appeals his removal—without hearing or notice of charges—as executor of Mary Runyan's estate by the Clinton Circuit Court. The issue here is:

> Whether Ditto's removal as executor without either notice of charges against him or a hearing was contrary to law because no emergency, as required by Ind.Code 29–1–10–6, existed.

We reverse.

FACTS

The facts most favorable to the judgment are as follows:

Mary Runyan died on December 27, 1986, leaving an estate of just under $1,000,000. On December 29, 1986, Max Ditto (Ditto), applied for, and received, Letters Testamentary.[1] He also provided bond for $100,000 at this time. On September 23, 1987, Ditto filed a Schedule of All Property for Determining Inheritance Tax and an Order Determining Inheritance Tax Due, which was approved by the Clinton Circuit Court on September 29, 1987. On December 9, 1987, Ditto filed a Petition to Settle Claims, proposing to settle a claim by Geneva Burns of $60,534 for $15,000,[2] and to settle a claim by Robert Smith of at

---

1. Runyan's will, dated September 29, 1970, had appointed Farmers Bank of Frankfort as executor of her estate. On August 19, 1985, Runyan executed a codicil, appointing Ditto as executor.

2. Burns' claim was for general household services rendered to Runyan from May 29, 1970, through October 24, 1984. (R. 226).

least $12,610, for $7,500 [3] (R. 104–105). The probate judge conducted a hearing to inquire into the validity of both the claims. Ditto's attorney, however, refused to discuss the validity of those claims. The probate court denied the petition, "until such time as the court receives more information to warrant granting the Petition to Settle Claims." (R. 108).

Burns and Smith were granted a change of venue to the Tippecanoe Circuit Court on January 22, 1988. (R. 234). Both Burns and Smith, however, filed Motions to Dismiss with Prejudice, which were granted, with the Tippecanoe court on February 9, 1988, stating that both of them had settled with Ditto—Burns was to be paid $15,000 and Smith $7,500.

On July 18, 1989, Ditto filed the executor's final account, and a "Petition to Settle and to Allow Account Petition for Authority to Distribute Assets Remaining and Close Estate." (R. 150). Listed on this petition was a distribution of $15,000 to Geneva Burns and David Little dated February 11, 1988, and a distribution to Robert Smith and David Little of $7,500, on the same date. The petition also listed payments to Robison, Bergum and Johnson of $60,000 for attorney fees, and payments totaling $60,000 to Ditto for executor fees. Five thousand dollars was claimed by both Ditto and his attorney for settlement of claims, apparently for the settlement of the Burns and Smith claims. The probate judge set a hearing on this petition for September 25, 1989, ordering Ditto to appear. On September 5, Ditto filed a motion for change of venue from the judge, which was denied. Ditto requested the court to reconsider its ruling on the change of venue on September 14, 1989. This motion was deemed denied because it was not ruled on within five days. *See* Ind.Trial R. 53.4.

On September 25, 1989, the probate court conducted a hearing on the petition to settle the estate. At the hearing, the judge inquired into the validity of the Smith and Burns claims, attorney fees and executor fees. Ditto refused to discuss the claims or fees. Instead, he argued that an inquiry at this point was inappropriate because the court had approved the accounting when it approved the inheritance tax schedule. He also claimed he was not prepared to present evidence in support of his petition as no objections had been filed. After the hearing, the probate court, on its own motion, removed Ditto as executor, issuing the following order:

### ORDER

On May 27, 1987, two claims were filed in this estate, one by Geneva I. Burns seeking $60,534 for services rendered from May 29, 1970, through October 24, 1984, and one by Robert L. Smith seeking $12,610 for services rendered from January 1970 through December 27, 1986. At the time the claims were being processed, one Ruth Dunn, an employee of the Clerk of the Clinton Circuit Court with an impeccable reputation, stated excitedly that the claim of Mr. Smith was not accurate in that the decedent performed work for Mr. Smith, not he for the decedent.

On December 9, 1987, a Petition to Settle Claim was filed by the executor seeking to settle the claim of Geneva I. Burns for $15,000 and the claim of Robert L. Smith for $7,500.

The matter was set for hearing on the petition, at which time counsel for the executor contended that the Court had no option but to authorize the settlement and could not inquire into the reasons. The Court held on January 4, 1988, that such a position made the petition itself a superfluous act and nullified I.C. 24–1–14–18 and further declined to grant the petition until such time as it received such information to warrant it being granted.

Claimants' counsel filed a motion for change of venue on the claims which were venued to Tippecanoe where claimants' counsel filed a Motion to Dismiss with Prejudice on February 9, 1988. The

---

**3.** Smith's claim was for lawn care and maintenance chores performed for Runyan from January, 1970, through December 27, 1986. (R. 229).

memorandums signed by both counsel for the claimants and counsel for the executor settled the claim of Geneva I. Burns for $15,000 and the claim of Robert L. Smith for $7,500.

On July 18, 1989, executor filed Executor's Final Account, Petition to Settle and Allow Account Petition for Authority to Distribute Assets Remaining and to Close Estate.

This matter was set for hearing on September 25, 1989, at which time the executor was ordered to appear.

On September 5, 1989, a Motion for Change of Venue from the Judge was filed which was denied on September 11, 1989. On September 14, 1989, another Motion for Change of Venue from the Judge was filed moving "... the Court to Reconsider...." Being a motion to reconsider said motion was deemed denied when not ruled upon within five days.

At the hearing on September 25, 1989, counsel for the executor advised that he did not know the subject matter of the hearing and could not proceed. The hearing was on the final account as stated in the order setting the matter for hearing. Counsel was further advised that the Court was interested in the justification for the attorney fee of $60,000 and the executor fee of $60,000 in an estate with a beginning inventory of $930,517.53 and receipts of $235,701.88 and was interested in the settlement of the claims of Geneva I. Burns and Robert L. Smith.

Counsel moved for a continuance which was denied. Counsel then declined to provide to the Court the information requested and the hearing was concluded.

The Court, while not taking the statement of Mrs. Dunn as testimony or as fact but merely as a basis for inquiry, feels that considerable effort and resources have been expended to preclude

the court from learning the details of the settlement of the claims. Especially interesting to the Court is the fact that were all of Mr. Smith's claims to be allowed which are not excluded by the six year statute of limitations the amount would be less than the settlement amount. Also, the amount of fees by the attorney and the executor and the justification therefore are of concern and importance to the Court.

Upon failure of the executor to provide information to the Court to make a determination as to the Final Account and the obvious efforts to preclude the court from attaining such information

IT IS ORDERED AND ADJUDGED that Max L. Ditto is removed as executor of the Estate of Mary M. Runyan and Richard D. Martin is appointed executor of the Estate of Mary M. Runyan.

IT IS FURTHER ORDERED that letters testamentary are ordered issued to Richard D. Martin who shall hire his own counsel to aid him to proceed to discharge his duties as executor which shall include inquiring into the facts and circumstances surrounding the settlement and compromise of the claims of Geneva I. Burns and Robert L. Smith.

IT IS FURTHER ORDERED that Max L. Ditto shall turn over to Richard D. Martin all documents in his possession to aid Richard D. Martin in the execution of his duties.

ENTERED this 25th day of September 1989. (R. 204).

Ditto's motion to the court to stay the execution of the order removing him pending appeal was denied.

Ditto now appeals his removal as executor, arguing that his removal is contrary to law because there were no charges filed against him, he was not given notice. or a hearing regarding his removal, and there was no emergency to justify his removal without notice and hearing—all contrary to I.C. 29–1–10–6.[4]

---

4. 29–1–10–6 **Removal of personal representatives; prior acts**

Sec. 6 When the personal representative becomes incapacitated (unless the incapacity is

caused only by a physical illness, infirmity, or impairment), disqualified, unsuitable or incapable of discharging the representative's duties, has mismanaged the estate, failed to perform

## DECISION

The probate court has great latitude and wide discretion in matters concerning the appointment and removal of executors. *Estate of Jaworski v. Jaworski*, (1985), Ind. App., 479 N.E.2d 89. This court will not interfere with the probate court's action unless it is clear its discretion has been abused. *Id.* When a statute prescribes the steps necessary to remove a personal representative, the statute must be obeyed, and a non-complying order of removal is ineffectual. Henry's Probate Law and Practice, § 1304, at 528 (1989); 31 Am. Jur.2d Executors and Administrators, § 295 (1989).

I.C. 29-1-10-6 contemplates removal of a personal representative in two ways: 1) after notice of the charges and a hearing; or 2) without notice or citation in the case of emergency. *See* Henry's Probate Law and Practice, *supra* § 1307, at 537. An emergency is defined as an unforeseen set of circumstances which calls for immediate action. *May v. Sansberry*, (1949) 119 Ind. App. 523, 86 N.E.2d 88. Absent a clear emergency, the personal representative who is sought to be removed is entitled to notice and a hearing. *State v. Johnston*, (1933), 204 Ind. 563, 185 N.E. 278. When a personal representative is removed without notice and a hearing, the probate court must disclose, at least in substance, the facts constituting the emergency so that this court may review the probate court's action to determine if there has been an abuse of discretion. *Meyer v. Anderson Banking Co.*, (1961) 243 Ind. 145, 177 N.E.2d 662; Am.Jur. *supra*, § 303.

In *May, supra,* the personal representative was removed by the court upon petition by James Sansberry, an heir and attorney for the estate. Sansberry alleged, among other things, that the personal representative should be removed because he refused to follow Sansberry's advice to settle a substantial claim against the estate. Sansberry also requested the personal representative be removed because he had failed for nine months to comply with an order to amend the inventory and to sell certain property and had failed to file a current report for over two years. The court held that, although the petition alleged statutory grounds for removal, the circumstances did not create an emergency to justify the personal representative's removal without a hearing.

■ In the case before us, the judge ordered that Ditto be removed as executor because he failed to provide information to the court regarding the final distribution of the estate because of Ditto's "obvious efforts to preclude the court from attaining such information." (R. 204). Specifically, the court points to Ditto's refusal to answer the judge's questions regarding the attorney and executor fees and the settlement of the Burns and Smith claims.

We find this case to be similar to *May*. Like the personal representative in *May*, Ditto was uncooperative with the court. In both *May* and in the present case, however, there was no showing that the assets of the estate were in danger. In fact, Ditto had filed a final accounting with the court and was ready for the estate to be closed, pending the court's approval. Finally, we note that Ditto was bonded.

■ We do not agree, however, with Ditto's argument to the probate court that the court could not inquire into the payment of the Burns and Smith claims after the claims had been dismissed in the Tippecanoe Circuit Court. Apparently, Ditto is

any duty imposed by law or by any lawful order of the court, or has ceased to be domiciled in Indiana, the court may remove the representative as provided:
    (a) The court on its own motion may, or on petition of any person interested in the estate shall, order the representative to appear and show cause why the representative should not be removed. Such order shall set forth in substance the alleged grounds upon which such removal is based, the time and place of the hearing, and may be served upon the personal representative in the same manner as a notice is served under this article.
    (b) The court may without motion, petition or application, for any such cause, in cases of emergency, remove such personal representative instantly without notice or citation.
The removal of a personal representative after letters are duly issued does not invalidate official acts performed prior to removal.

arguing that once the claims were venued to another court, the probate court lost all jurisdiction over the claims. Ind.Code 29–1–14–18,[5] however, mandates court approval of compromised claims. No judgment for payment was entered on the two claims—the parties dismissed the claims after a settlement had been reached. Thus, Ditto had no authority for the payment of the claims other than by a settlement. In a case such as this, jurisdiction remains in the probate court to approve the compromise. To hold otherwise would reach an absurd result, that is, construing I.C. 29–1–14–18 to permit executors to settle claims, however spurious, without court approval after the claim is venued to a different court and dismissed.

The propriety of the Burns and Smith claims also arises in the context of attorney fees.[6] Ditto and his attorney each claimed $5,000 in fees for settlement of claims. Ind.Code 29–1–10–13 requires court approval of attorney and executor fees. If the claims were improperly paid in ·the first place, the attorney and executor fees would be affected.

Finally we note that, in questioning Ditto as to some of the distributions, the probate court was properly discharging the duty imposed on him by the probate code, even if there were no objections filed by those interested in the estate. As this court stated in *Diaz v. Duncan* (1980), Ind.App., 406 N.E.2d 991:

> The administration of an estate implies a complete disposition of its assets and includes the proper payment of money to whomsoever is legally entitled thereto whether it be the creditors, legatees or distributees and until such determination of proper distribution has been made the estate should not be finally settled nor

should the personal representative be discharged. Henry's Probate Law and Practice Vol. 2, Ch. 27, § 8.

Our Probate Code provides that after a personal representative has rendered his final account and petitioned the court to decree the final distribution of the estate, the trial court shall determine proper distribution of the estate. Ind.Code 29–1–17–2(b) reads:

"(b) In its decree of final distribution, the court shall designate the persons to whom distribution is to be made, and the proportions or parts of the estate, or the amounts, to which each is entitled under the will and the provisions of this probate code, including the provisions regarding advancements, election by the surviving spouse, lapse, renunciation, adjudicated compromise of controversies and retainer...."

This section places the responsibility for designating the persons to whom distribution is to be made upon the probate court. It does not deny it the right to modify and correct the account and distribution even though no objections are filed thereto. Further, the personal representative is regarded as the trustee or agent appointed by law for the benefit and protection of both creditors and distributees. He bears a heavy burden in this regard for "[i]t is his duty to *guard* against error in distribution by exercising the greatest possible care to see that all available evidence is fully and truthfully presented to the court in a hearing of a petition for distribution of the estate. (citations omitted)" *Schumacher v. Adams County Circuit Court,* (1947) 225 Ind. 200, 205, 73 N.E.2d 689, 691–92. We do not believe the provisions of either Ind.Code 29–1–1–10 or Ind.Code 29–1–

---

5. I.C. 29–1–14–18 **Compromise of claims**
  The personal representative may, if it appears for the best interests of the estate, compromise any claim against the estate, whether due or not due, absolute or contingent, liquidated or unliquidated, but if such claim is not filed such compromise must be consummated within five (5) months after the date of· the first published notice to creditors. In the absence of prior authorization or subsequent approval by the court, no compromise shall bind the estate. ·

6. Ditto also argued to the probate judge that the compromise should be approved because the legatees did not object. This issue was before this court in *Diaz v. Duncan* (1980), Ind.App., 406 N.E.2d 991, in which we held that the probate court has exclusive authority to determine the proper distribution of the estate, even if no objections to the distributions have been made.

16–7 prohibit the probate judge from resetting a hearing on the personal representative's final account and proposed distribution nor, for that matter, did the failure to file specific written objections by an interested party relieve Diaz of his duty to make a full disclosure to the court of all facts necessary for a proper distribution of the estate. *Schumacher v. Adams County Circuit Court, supra.*

*Id.* at 1002. Thus, it was incumbent on Ditto to be prepared to provide the court with supporting data once it was requested. However, his failure to provide this information did not constitute an "emergency": "[w]hile the safety of the estate and its efficient administration is the paramount object of the probate court, ... [it] should not permit this consideration to control personal rights, or to lead to the impeachment of the competency or integrity of the court's appointee." Henry's Probate Law and Practice, *supra* § 1304.

Based on the above, we find that although the court's order claimed several improprieties, neither the order nor the record presented to us discloses "an emergency" (an immediate threat to the administration of the estate) as would justify a removal without a hearing.

On remand, the probate court should issue an order directing Ditto to explain the management of the estate and to document expenditures made—in particular, the executor and attorney fees as well as the claims of Burns and Smith. If Ditto fails in this regard, the court should proceed under the provisions of IC 29–1–10–6.

CONOVER and SULLIVAN, JJ., concur.